# IN THE OREGON TAX COURT

## LANE et al
*v.*
## DEPARTMENT OF REVENUE
(TC 2317)

Joel D. Kuntz, Stoel, Rives, Boley, Fraser & Wyse, Portland, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiffs rendered December 3, 1985.

**CARL N. BYERS, Judge.**

Plaintiffs are residents of Washington. Joseph Lane (hereinafter Mr. Lane) is engaged in the business of real estate

development. Trained as an architect, his interest and activities have evolved into constructing custom-made commercial buildings for national concerns. Plaintiffs and their four children are the principals in what is best termed a family real estate development business. According to the testimony, most of the business is done through a family partnership. However, the operations are sufficiently large that plaintiffs' lawyers and accountants occasionally advise them to use corporations.

The dispute in question arises out of two properties in Oregon. One was a 70,000 square foot building in Milwaukie, Oregon, constructed and owned by Pacific Cascade Corporation, the sole shareholder of which was Mr. Lane. Pacific Cascade Corporation was liquidated under IRC § 333 in March of 1979 and the property transferred into the name of Mr. Lane. He subsequently sold the property to a third party in December 1979 for a gain.

The second property was a similar commercial building located in Gresham, Oregon. In reliance upon a long-term lease executed with Modern Merchandising, Inc., the family partnership (the Lane Company) constructed the building in 1978 and then sold the building in 1979, again realizing a gain on the sale.

The plaintiffs' method of operation, discussed in more detail later in this opinion, involved borrowing large sums of money to construct the buildings. Each loan was obtained from the Bank of America Mortgage of Washington on the strength of a long-term lease with one of the national concerns, a mortgage on the property to be constructed and plaintiffs' personal guaranty. The transactions were so structured that the rent received from the long-term lease would pay the cost of maintenance and operation of the building as well as retire the debt incurred to construct the building. Mr. Lane and his family hoped by this method to accumulate substantial real estate holdings over a period of time. Like many other victims, plaintiffs' plans were uprooted by the economic tornado that swept the country in the form of highly escalated interest rates in 1979 and 1980. Plaintiffs had a number of projects in process which suddenly became uneconomic due to fixed-lease income but rapidly escalating mortgage payments. Plaintiffs' interest expense increased by

over $1 million per year. As the interest rates moved up to 18 and 20 percent, matters became worse because the sources of permanent financing for the projects dried up. That is, plaintiffs were unable to obtain at any price long-term mortgage financing necessary to pay off its short-term construction loans.

Mr. Lane testified that all of this placed the company in a dire financial position. Having no other alternative, plaintiffs placed all of their most desirable properties on the market. Plaintiffs hoped that they could realize a gain from the sale of some properties, apply that gain to the outstanding debt and thereby reduce the interest obligations. Plaintiffs sold approximately two-thirds of their properties. Despite realizing substantial gains on these sales, plaintiffs incurred substantial losses overall due to the interest expenses. The Oregon properties described above were two of the properties sold to pay off debts.

Plaintiffs did not file Oregon income tax returns for the years 1979 or 1980. Defendant, in the process of auditing property transactions, discovered the sales and requested plaintiffs to file Oregon income tax returns. Plaintiffs filed those returns, utilizing the apportionment method of reporting their income and expenses. This method resulted in only a minimal tax imposed for the years in question. Defendant, upon receiving the returns, concluded that the apportionment method should not be used, and, by using the separate accounting method, found substantial gains in Oregon and assessed a deficiency. Plaintiffs appeal from that assessment.

The auditor, in defending the assessment of a deficiency, explained that because of the short duration of plaintiffs' activities in Oregon, the apportionment method was not appropriate and would not fairly represent business done in Oregon. In addition to this, however, defendant asserts that the apportionment method does not apply for three separate reasons. Those reasons are:

(1)   Plaintiffs are individuals and the Uniform Division of Income for Tax Purposes Act (UDITPA) was not intended to apply to individuals. Moreover, the construction activities in Oregon were conducted by a corporation and a partnership which are separate legal entities. Defendant views

plaintiffs' activities as those of an investor and not a trade or business.

(2) Plaintiffs' income from Oregon was "non-business" income.

(3) The apportionment method does not fairly represent the business activity of plaintiffs in Oregon.

■ The first two of defendant's positions are in conflict with the statutes and the facts. As nonresidents, plaintiffs are subject to ORS 316.127, which governs the income of nonresidents from Oregon sources. In addition to defining the income and expenses which are to be used in determining the nonresident's income for Oregon purposes, the statute expressly provides that:

> "(6) If a business, trade, profession or occupation is carried on partly within and partly without this state, the determination of net income derived from or connected with sources within this state *shall* be made by apportionment and allocation under ORS 314.605 to 314.670." (Emphasis added.)

■ ■ Defendant appears to assume this statute does not apply because plaintiffs conduct business in partnership form. While it is true partnerships are viewed as separate entities for many purposes, the statute defines them as "an association of two or more persons to carry on as co-owners a business for profit." ORS 68.110. In the context of apportionment statutes, it is the individual partners who conduct the trade or business. Since partnerships are tax reporting and not tax paying entities, the apportionment statute must be applied to the partnership income of the partner. This appears to be consistent with defendant's regulations and the purpose of allocating income earned in and out of Oregon. See OAR 150-316.127(1).

Based on the evidence adduced, the court finds that plaintiffs are engaged in the business of real estate development on a nationwide basis. Consequently, plaintiffs' share of the gain which they reported from the sale of the building in Gresham by the partnership must be apportioned since the partnership carries on business partly within and partly without the state. Likewise, the gain realized by Mr. Lane from the sale of the building in Milwaukie results from a business carried on by him both partly within and partly without Oregon.

■    The apportionment statutes recognize, however, that the method may not fairly fit every case. In that event, ORS 314.670 provides:

"If the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for and the department may permit, or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(1)   Separate accounting;

"(2)   The exclusion of any one or more of the factors;

"(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4)   The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income."

Defendant contends that the apportionment method does not "fairly represent the extent of the taxpayer's business activity in this state" and therefore separate accounting should be used. It is necessary to review the plaintiff's business activities to resolve this issue.

Plaintiffs' business operations are based in Seattle, Washington. Over the years, Mr. Lane has developed close working relationships with national concerns such as J. C. Penney Company and Modern Merchandising, which operates Jafco Stores. As a result, a typical transaction is initiated by the client indicating to plaintiffs a geographic area of interest for establishing a new store or distribution facility. In response to this initial indication, plaintiffs' employees from Seattle are sent to scout out the indicated geographic area to locate possible sites and available land. Based on the scouts' report, plaintiffs prepare some initial proposals. Apparently depending upon the intensity of the business interest in the area, plaintiffs may or may not obtain options for property. It appears, however, in most cases that plaintiffs' employees will investigate zoning and building restrictions, possible financing and available building contractors and supplies. Based on this data, plaintiffs then make a proposal to the national concern. If the proposal appears satisfactory, a long-term lease is prepared or a commitment letter is obtained to enter

into a lease. Based on the commitment by the national concern, plaintiffs then engage local contractors, buy land, borrow the money and construct the building which is then leased to the national concern. Plaintiffs maintain and manage the buildings which they construct after they are leased. In geographic areas where plaintiffs own a number of such buildings, they will have employees living in that locale. In the more scattered areas, employees from the Seattle office visit and inspect the buildings relative to maintenance and operation. The Seattle office maintains the books and records for all of plaintiffs' operations.

Plaintiffs introduced evidence of specific business activity in Oregon which is not reflected by the separate accounting method. The evidence indicated that J. C. Penney Company had expressed interest in establishing a distribution warehouse in Oregon. After two years of study and investigation, including hiring outside architects and other professionals to prepare plans for the building and landscaping, plaintiffs purchased a site for the project from Southern Pacific Company. The project was to be financed by industrial revenue bonds. However, due to changes in the money market and the limitations on the bonds, it became impractical to sell the bonds. As a result, plaintiffs had to inform J. C. Penney Company that it was unable to perform its contract. Plaintiffs sold the land back to Southern Pacific Company for approximately the same price, plus expenses of purchase and repurchase, but plaintiffs suffered substantial losses in the amounts paid for architect fees, legal fees and other preparatory expenses which could not be recovered.

Under the separate accounting method, as applied by defendant, none of the activities in connection with the proposed Penney distribution warehouse would be reflected in plaintiffs' income. Although the auditor indicated that he relied upon plaintiffs' allocation of expenses in plaintiffs' returns as filed, it is clear from the evidence that the auditor was not even aware of the extent of plaintiffs' activities in Oregon until the time of trial. Moreover, the income tax returns filed by plaintiffs included allocations of expenses in connection with rental income but this was done on the assumption that the apportionment method was applicable. Contrary to defendant's position, it appears to the court that it is necessary to use the apportionment method in order to

fairly represent the extent of plaintiffs' business activities in the State of Oregon. Plaintiffs' income tax returns show substantial overall losses which must be due in part to the aborted Penney's distribution warehouse project described above. Based upon these findings, the defendant's Opinion and Order No. 4-0059-A is in error and should be set aside and held for naught.

From the evidence adduced at the trial, it is apparent that defendant's position was maintained in part due to lack of information. Most of the exhibits and information submitted by plaintiff had not been disclosed or furnished to defendant prior to the trial despite defendant's request for information. As indicated by this court in *Romani v. Dept. of Rev.,* 10 OTR 64 (1985), discretionary awards of attorney fees or costs will not be made to parties whose refractory attitude makes the litigation necessary. Accordingly, no costs or attorney fees will be awarded to either party.