# IN THE OREGON TAX COURT

## FINN et al
*v.*
## DEPARTMENT OF REVENUE
(TC 2545)

Russell M. Wills, Portland, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision part for plaintiffs, part for defendant rendered March 11, 1987.

## CARL N. BYERS, Judge.

Plaintiffs appeal from the denial of certain deductions claimed on their 1980 and 1981 income tax returns.[1] The claimed deductions raise two separate issues which require separate discussion.

### Travel Expenses

Prior to 1979, Mr. Finn engaged in the construction business in Oregon. Mr. Finn also engaged to a lesser degree in developing real estate. While vacationing with their family in Tahiti, plaintiffs decided Tahiti would be a good place to live. Apparently its climate and culture appeared to be more conducive to their health. Sometime during 1977-78, plaintiffs decided to move to Tahiti and entered into a long-term land lease there. (Aliens are not authorized to purchase land in Tahiti.) Plaintiffs then built a home on the land and moved to Tahiti with their family in 1979. Prior to moving to Tahiti, Mr. Finn sold his construction business and some of his real property. Mr. Finn was unable to sell all of the real property but continued to attempt to sell it.

Mr. Finn was required to return to Oregon to assist the purchaser of his construction business and to attempt to dispose of the rest of his real estate holdings.

Mr. Finn testified that initially he did not have a trade or business in Tahiti. He indicated that aliens are prohibited from working or engaging in business in Tahiti for at least two years. After an initial residency of two years, aliens are permitted to engage in business or be employed in jobs which do not compete with the local economy. During the two-year period, he spent his time investigating possible businesses, but was unsuccessful. During that time plaintiffs' source of income consisted of payments received from the sale of the construction business and real estate in Oregon. The economic recession in Oregon eventually resulted in the purchaser of the construction business declaring bankruptcy and the purchasers of the real property defaulting.

In 1981, Mr. Finn made three trips to Oregon. Two of the trips were to assist with the construction business.

---

[1] Although plaintiffs' appeal concerns both years, the only evidence introduced pertained to the year 1981.

During the third trip, he not only assisted with the construction business but engaged in some construction work on his own account as well as continuing to work at marketing his real estate. While the first two trips were only two weeks and one week in duration, respectively, the third trip lasted from June 5 to November 26. Plaintiffs deducted $12,153.17 on their 1981 Oregon income tax return for travel and entertainment expenses incurred in connection with this business. Defendant denied these deductions as not being incurred "away from home."

■ There are three requirements for travel expenses to be deductible. Those requirements are:

(1) They must be incurred in connection with a trade or business;

(2) They must be incurred while away from home; and

(3) They must be reasonable and necessary. Although it appears that defendant was initially not satisfied with plaintiffs' substantiation of their expenses, the primary reason for denying the deduction was that the travel expenses were not incurred "away from home."

■ The concept of a tax home has long been a troublesome one. See 6 Mertens, Law of Federal Income Taxation § 25.112, at 347. In the leading case of *Commissioner v. Flowers,* 326 US 465, 66 S Ct 250, 90 L Ed 203 (1946), the Supreme Court held that a taxpayer who chose to live in one city but worked in another could not deduct the expense incurred in traveling between work and home. Subsequent cases and the circumstances in those cases have substantially muddied the waters. Some courts hold that a taxpayer's personal abode is his tax home, not the area where he works. *Wallace v. Commissioner,* 144 F2d 407 (9th Cir, 1944), and *Coburn v. Commissioner,* 138 F2d 763 (2d Cir, 1943). However, the United States Tax Court and the Internal Revenue position has consistently been that the taxpayer's home means his principal place of business or employment. ORS 316.032 mandates that where there are conflicts in the federal courts Oregon will abide by the position maintained by the Internal Revenue Service. The question then is where was plaintiffs' principal place of business during 1981?

Although the circumstances are not entirely without incongruities and inconsistencies, the preponderance of the evidence indicates that plaintiffs' principal place of business was in Oregon. Although plaintiffs may have moved to Tahiti with good faith intentions of living there the rest of their lives, they did not have a trade or business in Tahiti. Mr. Finn testified that the laws of Tahiti prohibited him from being engaged in a trade or business for the first two years of his residence there.

Even if he had a trade or business in Tahiti during 1981, it is doubtful that Tahiti would qualify as his tax home. Where a taxpayer conducts business in more than one location, his tax home is that place where he conducts his principal trade or business. Rev Rul 60-189, 1960-1 CB 60. During 1981, most of plaintiffs' income was produced in Oregon as a result of Mr. Finn's spending almost half the year here. Accordingly, the court finds that the travel expenses claimed by plaintiffs were not incurred "while away from home." They are therefore not deductible as travel expenses incurred in connection with a trade or business.

*Charitable Contribution.*

The second issue raised by plaintiffs' complaint concerns the deductibility of a contribution in kind. The relevant facts are as follows: Prior to plaintiffs' moving to Tahiti, an acquaintance promoted the construction of a ski lift on the upper portions of Mt. Hood to make year-round skiing feasible. One means of raising capital to build the lift was the sale of membership in a "Club 2000." Membership in the Club 2000 entitled the member to receive two day- and two night-lift-tickets without charge each day. Although the club membership cost $2,000, it was good until the year 2000. At the then standard cost of a lift ticket of $14 per day, the Club 2000 membership had a potential total value in excess of $92,000.

The Club 2000 brochure further indicates:

"Those of you who do not belong to a skiing family, but are interested in a college, school, Y, hospital, etc., can buy the Club 2000 membership card and donate it to the charity of your choice, giving much more value than the $2,000 tax deduction."

Mr. Finn anticipated that Club 2000 membership

cards would become more valuable and could be resold at a profit. Accordingly, he eventually bought five such membership cards. He testified that the widespread use of the cards, however, cut into the ski operator's daily income and eventually litigation ensued. As a result, the membership card did not increase in value as he had anticipated.

During the year in question, plaintiffs loaned the five membership cards to a charitable organization whose function was to help train skiers for the U.S. Olympic Team. The Olympic hopefuls used plaintiffs' tickets a total of 84 times during the year in question. At the rate of two tickets per use and based on a lift ticket price of $14 per lift ticket, the charitable organization received benefits equal to $2,352. (Exhibit 2.) Plaintiffs deducted this amount on their income tax return as a charitable donation.

Defendant disallowed the charitable deduction on the grounds that taxpayers are not entitled to a deduction for the use of property only. Defendant challenges both the recognition of a deductible gift and the value of that gift.

■ Contributions to charities are deductible as itemized deductions only as authorized by IRC § 170. Subsection (f)(3)(a) of that section provides:

"In general.—

"In the case of a contribution (not made by a transfer in trust) of an interest in property which consists of less than the taxpayer's entire interest in such property, a deduction shall be allowed under this section only to the extent that the value of the interest contributed would be allowable as a deduction under this section if such interest had been transferred in trust. For purposes of this subparagraph, a contribution by a taxpayer of the right to use property shall be treated as a contribution of less than the taxpayer's entire interest in such property."

Defendant contends that plaintiffs are not entitled to a deduction for the use of plaintiffs' Club 2000 card because plaintiffs did not surrender their entire interest in the card. This seems too broad a view of the term "property" as used in the statute. The use of plaintiffs' Club 2000 card is like the use of a charge card or other tangible chose in action which entitles the holder to some benefit. In this case, the right was to obtain lift tickets. The court sees no real difference between

the plaintiffs or their agent obtaining the lift tickets for the ski team members and letting the charitable organization obtain the tickets.[2] Certainly this circumstance is substantially different than the use of tangible property such as real estate.

■ In Rev Rul 74-348, 1974-2 CB 80, the Internal Revenue Service ruled on the deductibility of a contribution of tickets to a theatrical performance to a charitable organization. In that ruling, the individual had purchased a season ticket for a series of performances and donated only one ticket to the charitable organization. The Internal Revenue Service held that the donated ticket qualified for deduction because "donation of the taxpayer's ticket for an individual performance amounted to an absolute relinquishment of the taxpayer's right to admission." In this case, the taxpayers absolutely relinquished their right to the 168 lift tickets used by the members of the ski team. Accordingly, those tickets qualify as deductible contributions. The evidence showed that each lift ticket had a retail value of $14, or a total of $2,352.

■ Defendant raised a second issue pertaining to the deductible portion or value of the tickets. Defendant pointed out that under IRC § 170(e), the amount of any charitable contribution is reduced by the amount of any short-term capital gain which would be reportable as ordinary income. However, Mr. Finn testified that he purchased the five Club 2000 memberships as an investment. Based on the evidence, it appears that any gain from the sale of such interest would have been long-term capital gain and therefore the basis would not have been reduced. Accordingly, the court finds that plaintiffs were entitled to a charitable contribution of $2,352.

Defendant shall recalculate plaintiffs' personal income tax liability for 1981 in accordance with the determinations made above. Although plaintiffs prevailed on one of two issues, no attorney's fees will be allowed or granted. Defendant had requested substantiation and verification of expenses and contributions involved. The unrefuted testimony was that defendant's auditor had never seen Exhibits 2,

---

[2] Under all the circumstances present, it would be reasonable to view the person in the charitable organization to be plaintiffs' agent for purpose of obtaining the lift tickets.

3, 6 and Exhibit 10 before the trial. This court has previously held in *Romani v. Dept. of Rev.,* 10 OTR 64 (1985), and *Lane v. Dept. of Rev.,* 10 OTR 168 (1985), that attorney fees will not be awarded under such circumstances. Costs to neither party.