IN THE OREGON TAX COURT
MAGISTRATE DIVISION

JONES, GREY & BAYLEY, P.S.,
for itself and on Behalf of Certain of its Shareholders,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 991316B)

Robert C. Weaver, Jr., Garvey, Schubert and Barer, Portland and Gersham Goldstein, Henry C. Breithaupt, and Robert T. Manicke, Stoel Rives LLP, Portland, all argued the cause for Plaintiff.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant.

Decision for Plaintiff rendered December 12, 2000.

**SCOT A. SIDERAS, Presiding Magistrate.**

This matter is before the court on cross-motions for summary judgment. Defendant assessed Plaintiff, asserting that individuals, shareholders in Plaintiff, were partners of an Oregon firm who may be taxed for their share of partnership income that had an Oregon source. The 1995 tax year is at issue.

## STATEMENT OF THE ISSUE

■■ A brief discussion is necessary in order to provide a cogent statement of the issue. Oregon may tax nonresident partners of multistate partnerships to the extent their partnership income has an Oregon source. *See* ORS 316.127(1)(a);[1] *Lane v. Dept. of Rev.*, 10 OTR 168, 171 (1985). If, however, the nonresident is not a partner in the multistate partnership, but stands in a different relationship to the partnership, such as an employee or shareholder of a corporate partner, Oregon has no basis on which to tax the income attributable to the relationship. *See* OAR 150-316.127-(A)(1).

The appeal before the court concerns 29 Washington attorneys who are principals of a multistate law firm. Defendant argues that the Washington attorneys are partners by virtue of their specific rights, benefits, and obligations within the firm. As partners in an Oregon partnership, Defendant continues, the Washington attorneys are required to pay taxes to Oregon as nonresidents for their share of partnership income that has an Oregon source. Plaintiff reasons that the Washington attorneys are shareholders and employees in a Washington corporation that is itself a corporate partner in the Oregon partnership, and that this choice of business

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1995.

organization insulates the Washington attorneys from Oregon tax.

The issue to be decided is whether Plaintiff's business entity choice is entitled to recognition for tax purposes. If the Washington corporate partner is recognized as a separate entity, its attorney-shareholders[2] are shielded from tax. If the Washington corporate partner is not recognized as a separate entity, its attorney-shareholders become taxable as partners.

## STATEMENT OF FACTS[3]

In 1980, Jones, Grey & Bayley, a Washington partnership engaged in the practice of law, chose to incorporate under Washington's professional corporation statute and become Jones Grey. As shareholders in a professional corporation rather than partners in a general partnership, the attorneys enjoyed the benefits of limited liability, improved retirement benefits, the ability to change their tax year from a calendar year to a fiscal year, and a management structure that was more centralized and representative.

Following its incorporation Jones Grey continued its operations as a successful law firm in the Seattle area. The next milestone in the corporation came in the summer of 1986, when the Oregon law firm of Stoel Rives contacted Jones Grey to discuss the possibility of a merger. Sound business reasons supported the suggestion. Jones Grey had a strong presence in the Seattle legal market for corporate and security work. Stoel Rives offered additional depth in this area, as well as other attorneys with expertise in allied specialty areas. Economies of scale and access to preferable insurance markets were also factors.

As merger talks continued, the negotiating teams came to recognize the importance of preserving, in the new combine, the separate existence of Jones Grey. It was perceived that if Jones Grey were to liquidate as part of the merger of the two law firms, the immediate federal income tax consequences to Jones Grey and its shareholders would

---

[2] For ease of reading, the terms "employees" and "shareholders" will be interchangeably used.

[3] Those facts are taken from the Stipulated Facts, Stipulated Exhibits, and Plaintiff's Exhibits, which total more than 3,000 pages of materials.

be dramatic. Because liquidation would be treated as a fair market sale of Jones Grey's assets to its shareholders, Jones Grey would be subject to federal tax on the gain from its appreciated assets.

In addition to avoiding this federal tax burden, the shareholders of Jones Grey had additional reasons for wishing to preserve their corporation, among which included the favorable federal tax treatment of benefits they received as employees, such as the ability to exclude from federal gross income the cost of health and other insurance premiums paid on their behalf by the corporation. They also wished to avoid making income from their practice of law in Washington subject to tax by Oregon. Another strong concern was the shareholders' belief that Jones Grey must be preserved as a separate entity so that the corporation could withdraw and resume its independent practice of law in the event the union of the law firms failed.

Those perceptions of the Jones Grey shareholders could have been fatal to the merger, for Stoel Rives was a partnership. As a partnership, Stoel Rives was especially concerned with corporate partners. Inconsistent treatment between the partnership and its corporate partners could place Stoel Rives' retirement plans in jeopardy. Corporate partners also typically increase administration costs, and facilitate the impression, especially undesirable in a merger of law firms, that the Jones Grey attorneys were not integrated members of the new business, but a self-governing unit.

For those reasons, two guidelines framed the merger between the Oregon and Washington firms; first, that in the new business Jones Grey would continue to exist; and second, that within that business the differences between the Washington attorneys working as the employees of Jones Grey and the attorneys located elsewhere working as individual partners would be minimized. Each attorney would have an equal right to participate. Each would have the same vote as other members. No special privileges would attach to either group of attorneys.[4]

---

[4] That result was achieved by creating a partnership agreement that recognized both "individual partners" and "corporate partners." Each "corporate partner" has a "principal" who is its "shareholder and employee." "Principals," like

Those principles led to the June 1, 1987, execution of two merger documents, a "Merger Agreement" and an "Alternative Merger Agreement." The "Merger Agreement" created a union between Jones Grey and Stoel Rives by converting Jones Grey into a group of professional corporations, each of which would be owned by a single attorney. In this form Jones Grey was admitted as a partner in the Stoel Rives partnership, and the shareholders of Jones Grey became principals in the Stoel Rives firm. The "Alternative Merger Agreement" was based on the premise that Jones Grey would be liquidated at some time after January 1, 1989.

The "Alternative Merger Agreement" has yet to be fulfilled. Jones Grey will in all likelihood never be liquidated, due to continuing concern about the federal tax consequences, the advantage Jones Grey affords in reducing other states' minimum franchise tax, and most particularly, the fact that the administration of Jones Grey has been less expensive than the alternative.

For the last 13 years, Jones Grey has carried on as a partner in Stoel Rives. Jones Grey transacts its business with the Stoel Rives partnership in its own name. Jones Grey maintains all formal, and practical, signs of its continued existence as a corporation. Corporate actions of Jones Grey following its consent to become a partner in Stoel Rives include, among others, authorizing changes to the corporation's retirement plan, exchanging Jones Grey's assets for a capital account in the partnership, electing S corporation status, qualifying to do business in Oregon, approving changes to the professional corporations owned by the individual attorneys, issuing and repurchasing shares, meeting on corporate resolutions,[5] banking,[6] and filing all appropriate federal and state income and employment tax returns.

---

"individual partners," may be "capital members" with the right to participate in the management of the law firm. The Washington attorneys are shareholders of Jones Grey who, under the terms of the agreement, are "principals" and "capital members."

[5] Jones Grey transacted seven corporate meetings, or actions in lieu of meetings, during the year at issue.

[6] Jones Grey's bank account withdrawals for the year at issue were approximately $3 million. Jones Grey also held a capital account of $540,000 in the partnership.

## ANALYSIS

Jones Grey is a Washington corporation and a corporate partner in the Oregon partnership of Stoel Rives. Are the Washington attorneys who practice law in the firm of Stoel Rives, through their status as shareholders of Jones Grey, partners in the Oregon business, obligating them to pay Oregon income tax as nonresidents, calculated from that portion of their income with an Oregon source?

Defendant concludes that the Washington attorneys are partners and presents as precedent *Garvey, Schubert & Barer v. Dept. of Rev.*, 12 OTR 355 (1992). *Garvey* required this court to construe, for purposes of the limited fixed deduction permitted for compensation paid under the Multnomah County Business Income Tax section 5.70.025(A),[7] the meaning of "owner." *See id.* at 357 (determining whether the attorney-shareholders at issue were "owners" under the partnership agreement of the corporations). In its opinion, the court rejected Defendant's argument that only the three constituent professional corporations were "owners." *Id.* at 358. Instead, the court looked to the usual meaning of the word and reviewed the business documents to decide that each attorney-shareholder within the professional corporations was an owner, and expanded the deduction accordingly. *Id.* at 357-58.

Defendant would have the court reason from *Garvey* that, as the attorney-shareholders in *Garvey* were "owners" for purposes of the Multnomah County business income tax, so the attorney-shareholders of Jones Grey should be found partners of Stoel Rives under the Oregon personal income tax code. The court does not agree that *Garvey* supports that position. Two different tax codes are present. Even more consequential is the fact that the meaning of "owner," so crucial to the holding of *Garvey*, was nowhere defined in the

---

[7] Multnomah County Business Income Tax section 5.70.025(A) provides:

"In determining income for sole proprietorships and partnerships, no deductions shall be allowed for any compensation for services rendered by or interest paid to owners, provided, however, that 75 percent of income determined without deduction of owner compensation or interest, not exceeding an amount equal to $50,000 multiplied by the number of owners, shall be allowed as a deduction in addition to any other allowable deductions."

Multnomah County Code. *Id.* at 357. By contrast, this appeal is a dispute about the concept of partnership, which has been extensively defined for purposes of Oregon's personal income tax statutes. *See, e.g., CRIV Investment, Inc. v. Dept. of Rev.,* 14 OTR 181, 184 (1997). Although an interesting discussion of a situation when attorney-shareholders would wish the existence of their professional corporation disregarded, *Garvey* is not preclusive to this appeal.

■     Other decisions of this court more directly bear upon the issue in this appeal. *See, e.g., Brown and McAlpin v. Dept. of Rev.,* 3 OTR 481 (1969). In *Brown,* the court examined Defendant's claim that individuals performing personal services should not be permitted to recognize any reductions in tax that might be attributed to a choice of the entity under which they do business. *Id.* Noting that incorporation provided the individual taxpayers with a limit of personal liability, advantageous treatment of retirement funds, and the ability to deduct other expenses, this court recognized the two separate corporate entities involved in that case and directed that the individuals not be held to sole proprietorship standards. *See id.* at 487-88 (applying the doctrine of *Moline Properties v. Commissioner of Int. Rev.,* 319 US 434, 63 S Ct 1132, 87 L Ed 1499 (1943)). Where sound reasons support the business entity choice, the taxpayer has the right to operate his or her enterprise in a manner that may avoid or minimize taxes. *Id.* at 488.

Having established that Plaintiff is permitted to conduct its affairs in a manner that might limit its tax liability to Oregon, the next critical point is whether Plaintiff, as a matter of fact, did so. Prior to the merger of the two law firms, sound business reasons led Jones Grey to change its status from a partnership to a professional corporation. Those business reasons remained compelling during the merger negotiations. Concerns over the federal tax consequences of a Jones Grey liquidation, interest in the favorable federal tax treatment of benefits received by the Washington attorneys as employees, and the desire to preserve the Jones Grey corporation should the merger fail, are persuasive factors justifying the choice of a corporate form.

Moreover, since the merger, Jones Grey has continued to carry out a very real and separate existence. Jones Grey has transacted its business with the Stoel Rives partnership in its own name. It has authorized changes to the corporation's retirement plan, exchanged Jones Grey's assets for a capital account in the partnership, elected S corporation status, qualified to do business in Oregon, approved changes to the professional corporations owned by the individual attorneys, issued and repurchased shares, met on corporate resolutions, banked, and filed all appropriate federal and state income and employment tax returns.

Defendant seeks to discount this very real presence of Jones Grey by tugging on the other end of the string; that is, by focusing on the Washington attorneys who are its employees. Defendant points out that, as to Stoel Rives, the Washington attorney-shareholders of Jones Grey have all the title, benefits, rights, and obligations of the Oregon attorneys. The Jones Grey attorney-shareholders, Defendant continues, possess all the attributes of the Oregon attorneys, specifically job security, management control, voting rights, and sharing in the profits and losses. Observing that the terms of the partnership agreement preclude Jones Grey from either independently determining who its employees and shareholders may be, or directing their performance, Defendant contends that the employer/employee relationship between Jones Grey and its attorney-shareholders has been superseded by a partner/partnership relationship between the Jones Grey attorney-shareholders and Stoel Rives.

Those arguments, however, are further iterations of reasoning previously discarded by this court. As the preceding discussion of *Brown* demonstrated, the test for the separate recognition of the business entity is not whether the corporation functions as the alter ego of the individual performing the personal service. *See Brown*, 3 OTR 481. Instead, the analysis is whether sound business reasons, including the minimization of any tax burdens, support the individual's selection of a business entity and the accompanying manner of operation. *See id.* This court finds that the Jones Grey attorney-shareholders' decision to participate in Stoel Rives

through a corporate partner was justified by the minimization of any federal tax, the ability of the Jones Grey unit to survive a dissolution of the partnership, and the favorable treatment accorded to the Washington attorneys as employees. The conclusion follows that Plaintiff's business entity choice is entitled to separate recognition for tax purposes. Defendant therefore cannot disregard the corporate partner and attribute partnership status to Plaintiff's shareholders.

## CONCLUSION

Defendant's Motion for Summary Judgment is denied. Plaintiff's Cross Motion for Summary Judgment is granted.

IT IS THE DECISION OF THIS COURT that Plaintiff prevails in its appeal. The assessment is voided.