IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

RANDY REYNOLDS,                    )
                                    )
        Plaintiff,             )    TC-MD 140430D
                                      )
        v.                     )
                                      )
DEPARTMENT OF REVENUE,      )
State of Oregon,                 )
                                      )
        Defendant.          )    **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered June 26, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's Notice of Deficiency Assessment dated September 3, 2014, for the 2010 tax year. A trial was held in the Oregon Tax Courtroom on April 28, 2015, in Salem, Oregon. Plaintiff appeared and testified on his own behalf. Matthew Derby, Tax Auditor, appeared on behalf of Defendant. Michele Hillen (Hillen), Tax Auditor, testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 6 and Defendant's Exhibits A through I were admitted without objections.

## I. STATEMENT OF FACTS

Plaintiff testified that he "is a carpenter" * * * "with varied duties including lead worker and traffic control supervisor" for Hamilton Construction Company (Hamilton). Plaintiff referenced a letter from Hamilton, dated February 2, 2015, stating that Plaintiff "has traveled to many various construction projects in the Pacific Northwest. His job is required to go where the work is and one might not know when the call of duty arises elsewhere whether it is in Oregon,

Colorado, Alaska, etc." (Ptf's Ex 5.) After referencing documents labeled "PR Timecards w/Addons and Liabilities", Plaintiff testified that for calendar year 2009 and until October, 2010, he performed carpentry work (Job 0802) in Portland, Oregon, except for a two week assignment, May 3 through 13, 2010, in Eddyville, Oregon (Job 0507). (Ptf's Ex 2; Def's Exs B, C.) Plaintiff testified that beginning October 4, 2010, he worked in Eugene, Oregon (Job 0850). Plaintiff acknowledged that he continued working in Eugene until November 7, 2011, noting that his timecard reported work on the "Vollum Creek" project for eight days in July and August, 2011. (Def's Ex D). He testified that he could not remember where the Vollum Creek project was located.

Hillen testified that she disallowed Plaintiff's claimed business travel deductions except for lodging and per diem expenses during the time Plaintiff worked in Eddyville and Eugene because Plaintiff's tax home was Portland, not Central Point, Oregon where his personal residence is located. She testified that based on Plaintiff's timecards for the 2011 calendar year that were given to her during the conference held after Plaintiff appealed Hillen's audit adjustments she subsequently concluded that Plaintiff was not entitled to claim $3,256 in travel expenses related to Plaintiff's work in Eugene because the job assignment was more than one year in duration.

Plaintiff testified that he does not have a "regular place of business." He testified that he "moves around" and he cannot "pick and choose when and where" he works. Plaintiff testified that because he does not have a regular place of business, he used the following three factors stated in the Internal Revenue Service (IRS) Publication 463 to determine his "tax home:"

> "1. You perform part of your business in the area of your main home and use that home for lodging while doing business in the area.

/ / /

"2. You have living expenses at your main home that you duplicate because your business requires you to be away from that home.

"3. You have not abandoned the area in which both your historical place of lodging and your claimed main home are located; you have a member or members of your family living in your main home; or you often use that home for lodging."

(Ptf's Ex 3 at 2.) Plaintiff testified that in addition to being a carpenter he manages rental property located in Grants Pass, Oregon, and recited a list of his responsibilities. (Ptf's Ex 4.) He testified that he has "never lived" in the rental property, pays property taxes and because it was "built in 1955," the rental property requires "constant maintenance and remodeling." For calendar year 2010, Plaintiff testified that he performed various "activities at the rental property" on 11 different dates. (*See also* Ptf's Ex 6.) Hillen testified that Plaintiff reported a "net rental loss" of $3,830 for tax year 2010. (*See also* Def's Ex A-3.) Plaintiff responded, stating that "any business can have gains and losses" and "2010 the market was bad but that doesn't mean the rental house is not worth anything." He testified that he has never lived in the rental property and he plans to "keep" the property.

Plaintiff testified that he has not "abandoned" his Central Point home and his living expenses "are doubled because of his job," stating in an email to Defendant that in calendar year 2010 he "paid $800.00 per month at [M]otel 6 in Troutdale, Or[egon]." (*See also* Def's Ex G-1.) Plaintiff testified that "it is not reasonable" for him to "buy and sell" his home "every year he changed jobs; it's not profitable." He testified that he bought his personal residence when he was working in southern Oregon.

/ / /

/ / /

II.  ANALYSIS

The issue before the court is whether Plaintiff may deduct unreimbursed expenses for business travel expenses during the 2010 tax year.  This court has previously held that the Oregon Legislative Assembly "intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (footnote omitted), citing ORS 316.007[1].  "On this question, Oregon law makes no adjustments to the * * * [IRC] and therefore, federal law governs the analysis." *Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009); ORS 316.007; ORS 316.012(1). "Further, the view of the Commissioner of Internal Revenue as to the legal analysis is always dispositive."  *Porter*, 20 OTR at 30; *see also* ORS 314.011(3).

A.  *Applicable Law - General*

IRC section 162(a)[2] allows a deduction for travel expenses incurred in connection with a trade or business, stating in pertinent part:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including
>
> * * * * *
>
> "(2) traveling expenses (including amounts expended for meals and lodging other   than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;
>
> * * * * *
>
> " * * * For purposes of paragraph (2), the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2009

[2] All references to the Internal Revenue Code (IRC) are to the 1986 code with updates applicable to 2010.

exceeds 1 year."

The business expense deduction under IRC section 162(a)(2) includes deductions for mileage, meals, lodging and other travel expenses incurred while away from home in the pursuit of a trade or business. IRC section 262(a) generally disallows deductions for "personal, living, or family expenses" not otherwise expressly provided for in the IRC. "The purpose of IRC section 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). "Consequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." (*Id*.)

To deduct travel expenses under IRC section 162(a)(2), taxpayers must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.*, 18 OTR 76, 80-81 (2004) (citing *Finn v. Dept. of Rev.*, 10 OTR 393, 395 (1987)). At issue here is whether Plaintiffs' claimed expenses were incurred while "away from home."

"In general, a taxpayer's home for the purposes of section 162(a)(2)—i.e., the taxpayer's 'tax home'—is the taxpayer's principal place of business or employment." *Morey*, 18 OTR at 81 (citing *Harding*, 13 OTR at 459). "[A] person's principal place of business need not be limited to a specific location or job site. A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996) (citing *Ellwein v. United States*, 778 F.2d 506, 510 (8th Cir 1985)). The court in *Hintz* stated:

> "There undoubtedly will be situations when a construction worker will lack a principal place of business because the job sites to which he is sent are scattered over a large area. However, if the job sites are all located within the same general area, that area will constitute the taxpayer's principal place of business."

13 OTR at 467. "[T]he taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' That exception is in turn subject to an exception found in the flush language of section 162(a), which provides that any employment period in excess of one year is per se indefinite." *Morey*, 18 OTR at 81 (citation omitted).

A place of business is temporary if the employment is such that termination within a short period could be foreseen. *Mitchell v. Comm'r*, 74 TC 578, 581 (1980) (citation omitted); *see also Michaels v. Comm'r*, 53 TC 269 (1969). Whether employment is temporary or indefinite is a question of fact. *Peurifoy v. Comm'r*, 358 U.S. 59, 60-61, 79 S Ct 104, 3 LEd2d 30, (1958). "If employment at a work location is realistically expected to last (and does in fact last) for 1 year or less, the employment is temporary in the absence of facts and circumstances indicating otherwise." Rev Rul 99-7, 1999-5 IRB 4, 1999-1 CB 361[3] (emphasis in original); *see*

---

[3] Revenue Ruling 99-7 addresses when "daily transportation expenses incurred by a taxpayer in going between the taxpayer's residence and a work location [are] deductible[.]" In providing guidance on when employment that lasts less than one year is "temporary" rather than "indefinite," Revenue Ruling 99-7 states:

> "If employment at a work location is realistically expected to last for more than 1 year or there is no realistic expectation that the employment will last for 1 year or less, the employment is not temporary, regardless of whether it actually exceeds 1 year. If employment at a work location initially is realistically expected to last for 1 year or less, but at some later date the employment is realistically expected to exceed 1 year, that employment will be treated as temporary (in the absence of facts and circumstances indicating otherwise) until the date that the taxpayer's realistic expectation changes, and will be treated as not temporary after that date."

(Emphasis in original.) Revenue Ruling 99-7 allows a taxpayer to "deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works." (Emphasis in original.) Similarly, several circuits have determined that the temporary worksite must be located distant from the taxpayer's residence in order for commuting expenses to be deductible. *See, e.g.*, *Ellwein*, 778 F2d at 511; *Dahood v. United States*, 747 F2d 46, 48 (1st Cir 1984).

*also Daiz v. Comm'r*, 84 TCM (CCH) 148 (2002).

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 LEd2d 226 (1992). As the party seeking affirmative relief, Plaintiff has the burden of proof by a preponderance of the evidence. ORS 305.427. This court has previously ruled that a "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). In an income tax appeal, this court has the statutory authority to determine the correct amount of the deficiency (e.g., tax), "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575.

Plaintiff alleges that he did not have a "principal place of business or employment" during the 2010 tax year and that his "tax home" was his personal residence in Central Point. Defendant argues that Plaintiff was indefinitely employed in the Portland and Eugene metropolitan areas during calendar year 2010.

B. *IRC Section 162(a) One Year Rule*

As previously stated, the flush language of IRC section 162(a) states that "[f]or purposes of [162(a)(2)], the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." The entire calendar year 2009 and most of 2010 Plaintiff reported working on the same job (Job 0802) in Portland. That employment was in excess of one year. Plaintiff's tax home for that period of time was Portland. Section 162(a) denies Plaintiff the right to deduct travel expenses he incurred from January, 2010 through

September 30, 2010, except for travel expenses incurred and allowed by Defendant for Plaintiff's travel to Eddyville (Job 0507), May 3 through 13, 2010.

C. *Plaintiff's Tax Home after September 30, 2010.*

Beginning October 4, 2010, and through the end of the 2010 calendar year, Plaintiff worked on Job 0805 located in Eugene. In *Morey*, this court discussed three possible standards to determine whether the taxpayer was away from home for temporary employment; in that case, the court declined to "address which legal standard is controlling" because the taxpayer failed to meet the burden of proof under any of the standards. 18 OTR at 82. The Ninth Circuit follows the "reasonable probability" standard under which "[a]n employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case." *Morey*, 18 OTR at 82 (citing *Harvey v. Comm'r*, 283 F2d 491, 495 (9th Cir 1960)).

Similar to Plaintiff, the taxpayer in *Morey*, a union pipefitter, "could have been employed over a three-state area and [he] did not know how long each job would last or where the next job might be located." 18 OTR at 83. In *Morey*, the court found that the evidence supported a finding that the taxpayer "did not know exactly how long each job would last," but determined that evidence "was not dispositive." *Id*.

> "Although they are not required to prove a negative, taxpayers must offer some evidence, such as the type of job and employer, the expectations of that employer, or expectations of the customer, from which the court may determine whether a reasonable probability was known to [the taxpayer] that he would be employed only for a short period of time at the new location."

*Id*. The court observed that "most if not all construction jobs" are characterized by "the inherent risk that [the employee] might be laid off at any time and the impractical nature of having to

move from job site to job site[.]" *Id.* The court found that uncertainty insufficient:

"If taxpayers could come to the court under the standard that they propose with nothing more than testimonial evidence indicating that 'nothing is certain' or 'you never know what your next job is going to be,' then arguably a new exception would be carved out for construction workers because of the inherently uncertain nature of their work generally. As noted, such an exception has been routinely rejected by the courts."

*Id.* at 83-84 (citations omitted). Relying in part on evidence that, during the tax year at issue, there was a considerable demand for "union workers" with the taxpayer's skills and experience in Eugene, the court in *Morey* found that the taxpayer could reasonably expect long term employment with one contractor or with a number of contractors in Eugene. *Id.* at 84.

In *Wilson v. Comm'r*, 82 TCM (CCH) 899, WL 1415561 at *4 (2001), the U.S. Tax Court stated:

"Construction projects are typically, if not always, of limited duration. * * * However, this does not end the inquiry. This Court has recognized that when the taxpayer has a series of jobs with one employer, the actual duration of the employment relationship between the taxpayer and employer should be considered when determining whether the employment was indefinite. * * * This is true notwithstanding that the employment relationship consists of a series of shorter assignments. * * * Where the employee is highly regarded by the employer, as appears to be the case here, the relationship between the two parties is a continuing one, subject only to the availability of projects requiring the employee's skills. When a taxpayer has an ongoing relationship with an employer because he or she works on a succession of shorter projects, the taxpayer's employment status is not characterized as temporary for Federal income tax purposes."

(Citations omitted). Plaintiff, like the taxpayer in *Morey* "could have been employed over a three-state area and [he] did not know how long each job would last or where the next job might be located." 18 OTR at 83.

In 2009, Plaintiff worked exclusively for Hamilton in the Portland metropolitan area. Plaintiff's 2009 job assignment in Portland carried over to the first ten months of 2010. That job was "per se indefinite" under IRC section 162(a) because it lasted more than one year. For the

balance of calendar year 2010 (3 months), Plaintiff worked for Hamilton on a job located in Eugene. The evidence supports a finding that Plaintiff had developed a good reputation with Hamilton and was a valued employee. Plaintiff offered no evidence to dispute a conclusion that his job assignment could and did last more than one year. Defendant submitted payroll time cards showing that with the exception of 87 hours from January, 2011 through November 4, 2011, he worked on the same job located in Eugene. The evidence supports the court's conclusion that Plaintiff was indefinitely employed in the Eugene metropolitan area from October through December 2010. Plaintiff's tax home was Eugene during that period of time and Section 162(a) denies Plaintiff the right to deduct travel expenses he incurred from October, 2010 through December 31, 2010.

D. *The Deductibility of Travel Expenses from Tax Home to Other Business Activity*

Having concluded that Plaintiff had tax homes in Portland and Eugene during calendar year 2010, the next issue is whether Plaintiff can deduct travel expenses related to travel away from his tax homes to Grants Pass the location of his rental property. This court has previously concluded that the "threshold" issue is whether Plaintiff's rental property was a trade or business. *Morey,* 18 OTC at 87. Plaintiff must prove that he was continually and regularly involved in the activity and that his primary purpose for engaging in the activity was for income or profit. *Comm'r v. Groetzinger*, 480 US 23, 27, 107 S Ct 980, 94 LEd2d 25 (1987). Plaintiff testified that he has owned the rental property for many years, recited the list of his rental property responsibilities and reported 11 days during 2010 when he visited the rental property to address maintenance matters. There is ample evidence that the rental property was a business for Plaintiff.

/ / /

Even though the rental property was a business for Plaintiff, Plaintiff must prove that his primary purpose for returning to the southern Oregon area was not personal. Income Tax Reg § 1.162-2(b)(1),(2)(1960). In *Morey,* the court noted that the Tax Court's ruling in *Rider v. Comm'r*, 55 TCM (CCH) 1200 (1988) was "instructive" when considering the facts and circumstances:

> "In *Rider*, the taxpayer earned a steady income as a pilot. When the taxpayer was not working as a pilot, he owned and operated a 27 acre farm with his spouse, who apparently worked the farm while the taxpayer was away. The taxpayer engaged in all aspects of the farm when he returned home from his employment as a pilot. Although the taxpayer never realized a profit on the farm, he believed that we would eventually earn a profit once he retired the debt on the property. Nonetheless, the court stated:
>
> '[W]e are persuaded that [the taxpayer's] primary purpose in traveling to Ohio was to be at home in the popular sense of the word. It was his residence.
>
> Petitioner enjoyed living there. He thought it was a good place to raise children. We believe that *he would have traveled home even if he didn't have farm work to do*.'"

*Morey,* 18 OTR at 88 (citing *Rider,* TCM (CCH) at 1200) (emphasis in original).

Like the taxpayer in *Morey* and *Rider*, Plaintiff earned his income as a carpenter in locations that were substantial distances from his personal residence and rental property which were both located in southern Oregon. Plaintiff was the only individual identified as responsible for the rental property. Plaintiff did not submit evidence showing income or loss for any tax year; Defendant submitted a copy of Plaintiff's 2010 federal income tax return showing a loss with no supporting schedules and did not challenge Plaintiff's claimed loss during its audit. There is no evidence to deny Plaintiff's claimed rental income property loss.

Plaintiff's testimony supports his evidence that on nine days during 2010 he returned to southern Oregon for the purpose of taking care of his business, the rental property. (Ptf's Ex 6 at 1.) Plaintiff's evidence in the form of payroll timecards show that Plaintiff did not work on nine

of the 11 dates that he reported he was maintaining his rental property. (Ptf's Ex 2; Def's Ex C.) Payroll timecards state that on January 25, 2010, and September 25, 2010, Plaintiff was working "Job 0802" in Portland. (Ptf's Ex 2 at 1, 13.) There is no evidence showing that Plaintiff returned to southern Oregon during 2010 for any purpose other than to maintain the rental property for the nine days listed on Exhibit 6.

The court concludes that Plaintiff is entitled to deduct travel expenses from his Portland and Eugene tax homes to his rental property on each of the nine days he performed maintenance at his rental property.

## III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff was indefinitely employed in the Portland and Eugene metropolitan areas during the 2010 tax year and may not deduct travel expenses from his personal residence in Central Point to his employment in Portland and Eugene, during the 2010 tax year. Plaintiff may deduct travel expenses for business travel from Portland to Eugene and to his rental property in Grants Pass for the nine days identified in Plaintiff's Exhibit 6, excepting January 25, 2010, and September 25, 2010, which are contradicted by the payroll timecards. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff was indefinitely employed in the Portland and Eugene metropolitan areas during the 2010 tax year and may not deduct travel expenses from his personal residence in Central Point to his employment in Portland and Eugene during the 2010 tax year.

IT IS FURTHER DECIDED that Plaintiff may deduct, as business travel expenses, his travel expenses allowed by Defendant for his travel to Eddyville from May 3 through 13, 2010.

/ / /

FINAL DECISION TC-MD 140430D
12

IT IS FURTHER DECIDED that Plaintiff may deduct, as business travel expenses, his travel expenses between Portland and Eugene and his rental property in Grants Pass for the nine dates identified in Plaintiff's Exhibit 6 and supported by Plaintiff's payroll timecards.

Dated this ____ day of July 2015.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on July 24, 2015.*