James E. KELSO,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4420)

Trial was held March 20, 2000, in the courtroom of the Oregon Tax Court, Salem.

James E. Kelso, Plaintiff taxpayer, argued the cause *pro se.*

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered June 15, 2000.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals from Defendant Department of Revenue's (the department) disallowance of claimed business losses and business travel deductions for 1991, 1992, and 1993 tax years.

## FACTS

In 1978 taxpayer began employment as a railroad track maintenance worker. Initially, his job centered around Albany, Oregon, where taxpayer's parents' home was located. Later however, his employer reorganized its maintenance workers to form traveling work gangs. Those gangs were required to travel from work site-to-work site, never staying in one location for an extended period of time. Under that reorganization, taxpayer was required to constantly travel. During the years at issue, taxpayer worked at sites in Arizona, California, New Mexico, Oregon, and Texas.

Because of the constant travel required by his job, taxpayer purchased a 24-foot, self-contained motor home. Taxpayer would park his motor home near each of his work sites and, except for general upkeep, it would remain there until taxpayer moved to his next work location. For personal trips and grocery shopping, taxpayer would drive his car. The car was towed behind the motor home when traveling to a new work site. Taxpayer testified: "I began to live in the motor home and basically I lived on the road from 1990 * * * until 1993."

Taxpayer testified that despite living on the road, he paid $100 a month rent to his parents living in Albany, maintained a separate phone line, and received mail at their house. He claimed that his parents' house was his tax home and therefore deducted all of his living expenses incurred while working and living away from their house. Those expenditures included gas, oil, and maintenance expenses for his car and motor home, as well as all payments for meals and phone.

Taxpayer began the 1991 tax year working at various sites in Arizona, Texas, and New Mexico. In March of that year, all maintenance jobs for taxpayer's gang were abolished. Having no work, taxpayer returned to his parents' home. According to his travel log, taxpayer stayed there for approximately two months[1] until he received another work

---

[1] This contradicted taxpayer's trial testimony that he "hadn't been home more than * * * a day or two at a time for the better part of * * * three years."

assignment in California. Except for one more unemployment stint,[2] taxpayer spent the remainder of the year living in his motor home at various job sites—none of which were around his parents' home.

Taxpayer explained that he didn't enjoy railroad maintenance work and therefore frequently sought other sources of income. In 1991 he spent two weeks at an insurance school to obtain an insurance license. The insurance school expenses were claimed as a business loss.[3] However, taxpayer never finished the requisite schooling, never received a license, and consequently never received any income from insurance sales activities.

The next year, taxpayer traveled less. He spent approximately ten months living in Grants Pass. Those ten months included some periods of unemployment during which he remained in Grants Pass waiting for another work assignment. Taxpayer had become affiliated with a Grants Pass religious organization. He explained that he enjoyed living in Grants Pass and wanted to settle down there someday.

In 1992 taxpayer claimed another business loss. This time taxpayer investigated going into the real estate business. He testified that he spent over $1,000 for office supplies and another $5,000 on an "Ernie Kesler" real estate seminar[4] in Baltimore, Maryland. After returning from that seminar, taxpayer did a little real estate research but nothing more. No purchases, sales, or income ever arose from taxpayer's real estate foray.

In May 1993, after having lived and worked in Grants Pass continuously for over seven months, taxpayer spent six weeks, unemployed, living with his parents. Thereafter, taxpayer obtained another work assignment in Crescent Lake, Oregon. That was taxpayer's last railroad work location before he finally quit the railroad in September. After quitting, taxpayer obtained a job at a restaurant and lived in Grants Pass for the remainder of 1993.

---

[2] July 6 through September 25.

[3] Taxpayer also claimed $803.07 in office expenses and $117.56 for advertising.

[4] The seminar introduced those in attendance to a scheme for investing in real estate foreclosures.

That same year, taxpayer claimed a $5,982.75 business loss. This time the loss arose from his "photography business." Taxpayer had purchased a book on how professional photographers take photos and then made a trip to Mexico, taking pictures along the way. Expenses from that trip were claimed as a business loss. He testified that he planned to sell the Mexico trip photos through a photo stock house. Photos were never furnished to any stock house and, consequently, taxpayer never made any money from his photographs.

## ISSUES

(1) May taxpayer deduct, as business travel expenses, all of his living expenses incurred while away from his parents' home?

(2) Do taxpayer's insurance, real estate, and photography activities constitute businesses from which he is entitled to claim a business loss?

## ANALYSIS

Section 162 of the Internal Revenue Code allows taxpayers to deduct traveling expenses incurred "*while away from home* in the pursuit of a trade or business." (Emphasis added.) "In order for a taxpayer to prove that he was away from home, he must first demonstrate that he had a well-established tax home from which he could be away." *Cerny v. C.I.R.*, 62 TCM (CCH) 1061 (1991), *aff'd by unpublished opinions*, 2 F3d 1156 (9th Cir 1993).

"[F]or purposes of [section] 162, 'home' does not have its usual and ordinary meaning." *Henderson v. Commissioner*, 143 F3d 497, 499 (9th Cir 1998) (quoting *Putnam v. United States*, 32 F3d 911, 917 (5th Cir 1994)). "As a general rule, a taxpayer's principal place of business is his 'tax home.'" *Barone v. Commissioner*, 85 TC 462, 465 (1985). Where there exists no principal place of business, a permanent place of residence at which taxpayer incurs substantial continuing living expenses may be considered a tax home. *Id.*[5] If such a residence does not exist, then taxpayer is an

---

[5] *See also Henderson*, 143 F3d at 499 (requiring that the permanent home be "maintained for some business reason").

itinerant and has no tax home from which he can be away. "His home is wherever he happens to be." *Barone*, 85 TC at 465. The determination of the existence and location of a taxpayer's tax home is a determination of fact. *Cerny*, 62 TCM (CCH) 1061.

Here, taxpayer claimed that his tax home was his parents' home in Albany. The court disagrees. Taxpayer spent the majority of each tax year at issue living in his motor home. Taxpayer himself testified that he basically "lived on the road from 1990 * * * until 1993." The motor home was as much of a residence as taxpayer had. It contained, among other things: sleeping and eating quarters, a generator, refrigerator, and television. His car was parked next to his motor home and served as his primary mode of transportation. During taxpayer's furlough at the end of 1992, rather than return to his parents' home, he remained in Grants Pass, living in his motor home.

Supporting his position, taxpayer asserted that rent paid to his parents constituted duplicative expenses as required by Revenue Ruling 73-529. However, the courts have consistently required that duplicative expenses not merely exist, but they must be substantial and continuous. *See Henderson*, 143 F3d at 500; *Barone*, 85 TC at 465. Taxpayer's claimed duplicative expenses of $100 a month are too marginal to qualify as substantial. *Cf. Cerny*, 62 TCM (CCH) 1061 (where $175 a month rent was not considered to be a "substantial living expense").

Therefore, based upon the preponderance of evidence, the court finds that taxpayer was an itinerant. His parents' home was not his permanent place of residence and therefore taxpayer is not entitled to deduct his living expenses as travel expenses.

Having so concluded, the court turns to whether taxpayer's insurance, real estate, and photography activities constituted businesses, entitling him to claim losses.

The treatment of an operating loss (*i.e.*, excess of expenses over the gross income from an activity) is governed by the substantive Code provisions that allow deductions. (Code Secs. 162, 165, 167, 212, etc.) 4 CCH, Standard Federal

Tax Reporter, ¶ 9808.017. Under those provisions, deductions are not allowed unless the taxpayer is carrying on a business. *Jackson v. Comm.*, 86 TC 492 (1986), *aff'd* 864 F2d 1521 (10th Cir 1989). The determination of whether a taxpayer is carrying on a business must be made by examining the specific facts of each case. *Higgins v. Comm.*, 312 US 212, 217, 61 S Ct 475, 478, 85 L Ed 783 (1941).

■　It is well settled that "even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not 'engaged in carrying on any trade or business' * * * until such time as the business has begun to function as a going concern and performed those activities for which it was organized." *Jackson v. Comm.*, 864 F2d at 1521, 1525-26 (10th Cir 1989) (citation omitted).

■　Lack of sales will not *per se* prevent a taxpayer from claiming a business deduction. However, the absence of "legitimate efforts to locate potential buyers" of a product is fatal to a business deduction claim. *Jackson*, 864 F2d at 1526.

Here, taxpayer failed to show that he was carrying on a business. Taxpayer had no expertise in any of the three fields for which losses were claimed (*i.e.*, insurance, real estate, and photography). He spent little time or effort engaging in those activities and, consequently, never received any income.

Not only did taxpayer never sell any insurance policies or attempt to find buyers of insurance policies, he did not even have a license that would allow him to do so. In real estate, taxpayer never purchased or sold any properties. He merely "researched" some properties. As for his "photography business," merely buying film, a book on photography, and taking photos does not a photography business make. Taxpayer never provided the stock house with photos to see if anyone might be interested in purchasing his photographs. The absence of legitimate efforts to locate potential buyers is fatal to a claimed business deduction or loss. *Id.* Here no legitimate efforts to locate buyers existed. Therefore, based

upon the preponderance of evidence, the court finds that taxpayer's efforts with regard to insurance, real estate, and photography did not constitute "businesses." Taxpayer may not claim business losses or deductions for such activities.

In summary, the court finds that taxpayer may not deduct any of his living expenses as traveling expense deductions nor may taxpayer claim any of his expenses associated with insurance, real estate, or photography as business losses or deductions. Costs to neither party.