June BUCCINA
and Victor Buccina,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 020990C)

A telephone trial was held February 11, 2003.

Victor Buccina, Plaintiff (taxpayer), argued the cause for Plaintiffs *pro se*.

Mary Beth Wright, Auditor, Department of Revenue, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered July 25, 2003.

**DAN ROBINSON, Magistrate.**

Plaintiffs appealed to the Tax Court after Defendant audited and adjusted their 1998 and 1999 state income tax returns. Trial was held February 11, 2003. Victor Buccina appeared for Plaintiffs. Mary Beth Wright, an auditor for the Department of Revenue, appeared for Defendant. For ease of reference the parties will be referred to as taxpayers (collectively) or June and Victor, and the department.

The issue in this case is whether June's expenses while working in California may be deducted as business expenses under section 162 of the Internal Revenue Code (IRC).

## I. STATEMENT OF FACTS

Taxpayers lived and worked in San Jose, California, before moving to Ashland, Oregon. June worked for the San Jose School District as an instructor for mentally handicapped children, a job she found rewarding. Victor worked as a real estate agent. June is originally from Oregon. Victor grew up in the hills of upstate New York and disliked living

in the city of San Jose. Oregon was an obvious choice for retirement.

As June approached retirement, taxpayers decided to move to Ashland. Victor came to Oregon (Ashland) in 1995 and began building taxpayers' home. June remained in California until her retirement at the end of the 1996-97 school year when she joined her husband in Oregon. Meanwhile, Victor had begun working as a real estate agent in Oregon in 1996.

When June retired, her employer offered to continue her insurance, provided she worked a minimum of 47 days each school year. Due to that incentive, and her fondness for the job, June has returned to California each year since her retirement to work for the San Jose School District. Employment each year is contingent upon a number of factors including student enrollment, June's certification, and the district's financial resources. The job is classified by the school district as "temporary." A specific job offer has been extended each year, and the district is not required to extend an offer in any given year.

The tax years at issue are 1998 and 1999. June worked in the spring of 1998 for roughly three months until the end of the 1997-98 school year. June intended to work only 47 days that year, but remained until the end of that school year because another teacher became seriously ill. June returned to that same job in January 1999 and worked that entire calendar year except for the summer break. June worked a total of 10 months in 1999, first in the school office and later as an instructor. Her income that year was roughly $18,000, and the expenses for lodging and meals were approximately $9,200. June continued to work for the school district from the time of her retirement up to the time of trial in February 2003 and intends to continue working at least until the end of the 2002-03 school year.

Taxpayers sold their California home and when June goes to California to work she lives in an apartment. Victor does not go with June to California except "once or twice a month" to visit. The disputed deductions relate primarily to the costs of meals and lodging in California that taxpayers deducted on their 1998 and 1999 returns.

## II. ANALYSIS

Section 162 of the Internal Revenue Code (IRC) provides a deduction for business expenses. Subsection (a), encompassing travel expenses, provides, in part:

> **"In general.**
>
> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
>
> "\* \* \* \* \*
>
> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business \* \* \*."[1]

(Emphasis in original.) This is to be distinguished from "personal, living, or family expenses" that are generally not deductible. IRC § 262 (1998). The rationale for the travel expense deduction is that "a person's taxable income should not include the cost of producing that income." *Hantzis v. Commissioner of Internal Revenue*, 638 F2d 248, 249 (1st Cir 1981). When a taxpayer travels away from home for business purposes she or he incurs duplicate living expenses and the expenses incurred in addition to the normal costs of maintaining the home are deductible.

The United States Supreme Court (Supreme Court) articulated a three-part test to be used in determining whether travel expenses are deductible:

> "(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. \* \* \*
>
> "(2) The expense must be incurred 'while away from home.'
>
> "(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an

---

[1] The text of IRC section 162 (1998) is identical for tax year 1999.

expenditure must be necessary or appropriate to the development and pursuit of the business or trade."

*Commissioner v. Flowers*, 326 US 465, 470, 66 S Ct 250, 90 L Ed 203 (1946).

The *Flowers* case involved a lawyer who lived in Jackson, Mississippi, and who worked as general counsel for a railroad in Mobile, Alabama. The railroad allowed Flowers to do some work in Jackson, where his family lived, but his office was in Mobile. The Supreme Court focused on the third prong of the test rather than decide whether the expenses at issue were incurred "while away from home." The Supreme Court ruled that Flowers' expenses incurred in Mobile and while traveling to Mobile did not qualify for the deduction because the expenses arose, not out of the requirements of his employer, but from his own desire not to change his personal residence from Jackson to Mobile. *Id.* at 473-74.

■ Under *Flowers*, our taxpayer also fails the third prong of the test. Originally, both taxpayers were living and working in California and they made a personal decision to move to Oregon because June grew up in Oregon and Victor grew up in a rural setting and wanted to escape city life in California. The move was made as June approached retirement. June returned to the same job in California on a temporary basis to maintain insurance coverage. She worked three months in 1998 and 10 months in 1999. Had taxpayers remained in California the expenses of traveling back and forth to work would unquestionably be nondeductible commuting expenses. Taxpayers cannot convert a nondeductible expense to a deductible expense by moving away from their principal place of employment. That was made clear in *Flowers*, where the Supreme Court observed:

"Jackson was [Flowers] regular home. Had his post of duty been in that city the cost of maintaining his home there and of commuting or driving to work concededly would be nondeductible living and personal expenses lacking the necessary direct relation to the prosecution of the business. The character of such expenses is unaltered by the circumstance that the taxpayer's post of duty was in Mobile, thereby increasing the costs of transportation, food and lodging.

Whether he maintained one abode or two, whether he traveled three blocks or three hundred miles to work, the nature of these expenditures remained the same.

"The added costs in issue, moreover, were as unnecessary and inappropriate to the development of the railroad's business as were his personal and living costs in Jackson. They were incurred solely as the result of the taxpayer's desire to maintain a home in Jackson while working in Mobile, a factor irrelevant to the maintenance and prosecution of the railroad's legal business."

*Id.* at 473. Here, as in *Flowers*, there is not a "direct connection between the expenditure and the carrying on of the trade or business of the taxpayer" as required by the third prong of the *Flowers* test. *Id.* at 470. And, just as in *Flowers*, the "costs in issue * * * were * * * unnecessary and inappropriate to the development of [June's California employer's] business." *Id.* at 473. They were, in the words of the *Flowers* court, "incurred solely as the result of the taxpayer's desire to maintain a home in [Oregon] while working in [California]." *Id.*

■     Moreover, the court does not believe that the disputed expenses were incurred "while away from home," which is the code requirement for deductibility as well as the second prong of the *Flowers* test. However, as the Supreme Court noted, defining "tax home" has "engendered much difficulty and litigation." *Id.* at 471. The Commissioner of the Internal Revenue Service takes the position that a taxpayer's home for purposes of the section 162(a)(2) deduction is the taxpayer's principal place of employment and, under that view, the disputed expenses in this case would not be deductible because June's "tax home" would be the school where she worked in California. In order for taxpayers to succeed in their claim they must establish Oregon as June's tax home. Because California is June's tax home under the Commissioner's position, the disputed expenses would fail the code requirement and the second prong of the *Flowers* test[2] and would be nondeductible under section 262. *See* Rev Rul 63-82, 1963-1 CB 33. That view (that the tax home is the taxpayer's principal place of employment) has been adopted by

---

[2] Under the second prong, the "expense must be incurred 'while away from home.'" *Id.*

the United States Tax Court. *Mitchell v. Commissioner*, 74 TC 578, 581 (1980); *Kroll v. Commissioner*, 49 TC 557, 562 (1968). Oregon adopted the view of the United States Tax Court (and the Commissioner of Internal Revenue), finding a taxpayer's "principal place of business" to be her or his tax home. *Kelso v. Dept. of Rev.*, 15 OTR 175, 178 (2000), citing *Barone v. Commissioner*, 85 TC 462, 465 (1985); *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996). Consequently, the expenses are nondeductible because they were not incurred while away from home.

The same result would ensue if the matter were decided in federal court. The United States Ninth Circuit Court of Appeals, which encompasses Oregon, takes the view that a taxpayer's "home" for purposes of the section 162(a)(2) deduction is "the abode which is located in the vicinity of the taxpayer's principal place of business or employment, or as close thereto as possible." *Coombs v. C.I.R.*, 608 F2d 1269, 1275 (9th Cir 1979). Taxpayers fail under that test because the disputed expenses were incurred by June when she was living and working in California and her tax home during that time would be her place of residence in the vicinity of the school in California, which was the apartment where she lived and from which June daily commuted to work.

Taxpayers argue that they are entitled to the deductions because June's work is "temporary." The genesis of the exception for temporary employment was a decision by the United States Tax Court in *Peurifoy v. Commissioner of Internal Revenue*, 27 TC 149 (1956). *Peurifoy* involved two welders and a plumber who obtained work through a union hall that often sent them to other jurisdictions. *See id.* at 150-53. Each of the petitioners worked at various locations throughout the years at issue, sometimes near their home and at other times many miles away, including other states. *Id.* Jobs ranged in duration from weeks to years. Each was accustomed to return to the place of his residence upon the completion of a job. *Id.* at 155-56. The United States Tax Court found, in relevant part, that:

> "In this situation we are of the opinion that when any of the petitioners accepted temporary employment away from the places of their residence, they reasonably could not have been expected to establish a residence at the places of employment. In those instances the expenses incurred at

the places of employment are considered as being due to the exigencies of the trade or business."

*Id.* at 156. The United States Tax Court rejected the Commissioner's argument that certain assignments for each of the petitioners, lasting 20½ months, 12½ months, and 8½ months, respectively, were not temporary, but of indefinite or indeterminate duration. *Id.* at 156-57. On appeal, the Fourth Circuit Court of Appeals reversed the United States Tax Court, based on a determination that the taxpayers' work was not temporary, finding the lower court's determination "clearly erroneous." *Commissioner of Internal Revenue v. Peurifoy*, 254 F2d 483, 487 (4th Cir 1957). The Supreme Court affirmed the Fourth Circuit Court of Appeals, finding that the lower court had "made a fair assessment of the record." *Peurifoy v. Commissioner*, 358 US 59, 61, 79 S Ct 104, 3 L Ed 2d 30 (1958).

■      It is interesting to note that the Supreme Court neither accepted nor rejected the exception for temporary employment because it was not challenged by the Commissioner in *Peurifoy*. Moreover, it is not clear whether the exception applies to the second or third prong of the *Flowers* test. Nonetheless, the exception has come to be generally accepted. Section 162 of the code was amended, effective for expenses incurred after December 31, 1992, to limit the exception to circumstances where the taxpayer is temporarily away from home for less than one year. Pub L 102-486, § 1938(a), (b), 106 Stat 3033 (1992). However, according to the committee report, "if a taxpayer's employment away from home in a single location lasts for less than one year, whether such employment is temporary or indefinite would be determined on the basis of the facts and circumstances." HR Conf Rep No 1018, 102nd Cong, 2d Sess, *reprinted* in 1992 USCCAN 2472, 2521.

■      The exception for temporary employment is not without limitation; the expense must be incurred because of the exigencies of the taxpayer's trade or business. In *Hantzis*, the court, citing *Kroll*, noted that

"[T]he traveling expense deduction obviously is not intended to exclude from taxation every expense incurred by a taxpayer who, in the course of business, maintains two

homes. Section 162(a)(2) seeks rather 'to mitigate the burden of the taxpayer who, *because of the exigencies of his trade or business, must* maintain two places of abode and thereby incur additional and duplicate living expenses.' "

638 F2d 248 at 253 (emphasis in original). The *Hantzis* court went on to state that

> "The temporary employment doctrine does not, however, purport to eliminate any requirement that continued maintenance of a first home have a business justification. We think the rule has no application where the taxpayer has no business connection with his usual place of residence. * * *. Only a taxpayer who lives [in] one place, works [in] another and has business ties to *both* is in the ambiguous situation that the temporary employment doctrine is designed to resolve."

*Id.* at 255 (emphasis in original). The United States Tax Court has likewise ruled that "the ultimate question is whether the decision not to move [the] family residence while [the taxpayer] works somewhere else is attributable to personal choice rather than to exigencies of [the taxpayer's] trade or business." *Sanderson v. Commissioner of Internal Revenue*, 76 TCM (CCH) 619, 621 (1998). Here, June had no business justification for the continued maintenance of the Oregon abode. Again, taxpayers made a personal choice to move from California for retirement. Victor commenced employment in Oregon in the same line of work as he performed in California. June moved to Oregon roughly two years later, but continued to accept temporary work from her former employer to keep her insurance. These factors negate a finding of temporary employment sufficient to satisfy the *Peurifoy* exception, whether it pertains to the second or third prong of the *Flowers* test.

■ ■ The final argument taxpayers put forth is in the alternative: if the deductions are not deductible under the temporary work exception, June's residence was California and she does not owe any taxes to Oregon because there is neither Oregon source income nor Oregon residency. That argument also fails because taxpayers clearly changed their domicile from California to Oregon and to reestablish California as her place of abode, June would have to have abandoned her Oregon domicile and acquired a new domicile

in California. *See Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). Domicile is a common-law concept composed of two components: "a fixed habitation or abode in a particular place, and an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228 (1992) (citation omitted). "An individual acquires a domicile by living there, even for a brief period of time, with no definite intention of moving. It is the place to which a person has the intent of returning after an absence." OAR 150-316.027(1)(a) (1998).[3] June clearly abandoned California as her domicile when she retired and moved to her new home in Oregon. She has no "fixed habitation or abode" in California nor "an intention to remain there permanently" when she goes there to work. Taxpayers sold their California home as part of the transition to Oregon and June lives in an apartment when she is in California working. June returns to Oregon after each venture to California. Continued employment in California is not guaranteed.

### III.  CONCLUSION

The court concludes that Oregon was not June's "tax home" for purposes of the travel expense deduction provided by IRC section 162(a)(2). Nor are taxpayers entitled to the claimed deductions under the temporary employment exception because there was no business reason for June to maintain a home in Oregon. Finally, June is not a resident of California whose California-source income would be exempt from taxation by Oregon because June abandoned California as her domicile and established a domicile in Oregon and June's trips to California were not made with an intention to remain there indefinitely. Now, therefore,

IT IS THE DECISION OF THIS COURT that taxpayers' appeal is denied and the department's deficiencies for 1998 and 1999 are upheld.

---

[3] The text of OAR 150-316.027(1)(a) is identical for tax year 1999.