Tom D. HINTZ
*v.*
DEPARTMENT OF REVENUE
(TC 3815)

Tom D. Hintz (taxpayer) appeared *pro se*.

Joseph P. Dunne, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision rendered March 13, 1996.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals from assessments of income taxes and denial of refunds for tax years 1989 through 1991. Taxpayer deducted certain travel, meals, and lodging as away from home expenses. Taxpayer also deducted a loss realized on the sale of his 1967 Camaro. The Department of Revenue (department) disallowed these deductions and taxpayer appealed.

## FACTS

Taxpayer was born and raised in Ontario, Oregon, where he worked as an auto mechanic from 1962 to 1974. Around 1975 taxpayer entered the construction business as a mechanic and later became a heavy equipment operator. During his first nine years in the construction business, taxpayer worked for the same employer at 27 different job sites. Initially, when he traveled to the various job sites, taxpayer would stay at motels. However, in 1980, taxpayer bought a travel trailer and towed it to the various job sites. When a job was completed, he would tow it back to Ontario and park it in his mother's driveway.

Around 1982, taxpayer moved to Washington for work. He rented a space for his travel trailer in Tieton, Washington. This rental space also included a workshop. In 1984, taxpayer entered into the race car business. He began building a LUV (light utility vehicle) pick-up in the shop in Tieton and raced it in 1986.

During the period taxpayer lived in Washington he considered himself a resident of Washington. In March 1988 he left his travel trailer in Tieton, and returned to Ontario where he rented a mobile home. From March 1988 to August

1988, taxpayer operated his race car business out of Ontario, traveling frequently to race tracks in Washington and Idaho.

In August 1988, taxpayer resumed working in the construction business at a job site in the Portland area. In September 1988, he moved his travel trailer from Tieton and parked it in Scappoose. Throughout 1989, he lived in his travel trailer in Scappoose and traveled to various job sites in the Portland area. He did not move the trailer to the specific job sites because of the lack of available trailer sites. Taxpayer's travel log shows that he went to Ontario nine weekends during 1989. He claimed Ontario as his tax home for the 1989 tax year, and deducted lodging expenses associated with keeping his trailer in Scappoose. He also deducted his expenses for mileage and meals.

In 1990, taxpayer continued to live in his travel trailer in Scappoose and commuted to several job sites in the Portland area. He went to Ontario nine weekends during the year.[1] Again, he claimed Ontario as his tax home and deducted his expenses for lodging, meals, and travel.

For the 1991 tax year, taxpayer claimed Scappoose as his tax home on the advice of his accountant. In January 1991, he began working at a Salem job site. To avoid a lengthy commute each day from Scappoose, he rented a mobile home in Salem from his employer. In June 1991, taxpayer went to work for a new employer at a job site in Dallas. While working in Dallas, he lived in a motel. In August, he worked at a job site in Mill City where he also lived in a motel. Taxpayer worked in Mill City until mid-September when he returned to his trailer in Scappoose. During the remainder of 1991, taxpayer worked at two different job sites, one on Scholls Ferry Road and the other in Newberg. During 1991, taxpayer continued to rent the mobile home in Ontario and to store some of his personal belongings there.

In 1982, taxpayer purchased a 1967 Camaro for $2,700. Over the next few years he made several improvements and modifications to it. He testified that he spent approximately $9,600 on parts and materials for the car. In

---

[1] Taxpayer testified that he spent 11 weekends in Ontario; however, his travel log for 1989 shows only nine weekend trips to Ontario.

March 1989, he needed money and sold the unfinished car for $6,000. On his 1989 tax return, taxpayer claimed a loss of $5,985 resulting from the sale of the Camaro.[2]

## ISSUES

1. Was Ontario taxpayer's "tax home" for the 1989-90 tax years, allowing his travel, meals, and lodging expenses to be deducted under IRC section 162(a)(2).[3]

2. Were taxpayer's expenses for the 1991 tax year incurred while away from home under IRC section 162(a)(2).

3. Was the loss on the sale of taxpayer's Camaro an allowable investment loss under IRC section 212.

### 1989-90 "TAX HOME"

■ For purposes of measuring taxable income, the Oregon legislature intended to make Oregon's personal income tax law identical to the federal internal revenue code. ORS 316.007.[4] In doing so, the legislature adopted by reference the federal definitions of allowable deductions, including IRC section 162(a). This section allows a taxpayer to deduct travel expenses incurred in pursuit of business. It states:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-
>
> "* * * * *
>
> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2).

For travel expenses to be deductible there are three basic requirements: (1) they must be incurred in connection with a

---

[2] Taxpayer listed the loss on his 1989 return as a nonbusiness bad debt. Taxpayer now realizes the loss was not really a bad debt; instead, he claims it was an investment loss.

[3] All federal statutory references are to the Internal Revenue Code of 1989.

[4] All references to the Oregon Revised Statutes are to the 1989 Replacement Part.

trade or business, (2) they must be incurred while away from home, and (3) they must be reasonable and necessary. *See Finn v. Dept. of Rev.*, 10 OTR 393, 395 (1987). The issue here concerns whether taxpayer's expenses were incurred while "away from home." Taxpayer claims his tax home was in Ontario; therefore, he was away from home while working in the Portland area. The department claims taxpayer's tax home was in Scappoose.

Recognizing the Internal Revenue Code is not always clear, the Oregon legislature provided:

> "Insofar as is practicable in the administration of this chapter, the department shall apply and follow the administrative and judicial interpretations of the federal income tax law. When a provision of the federal income tax law is the subject of conflicting opinions by two or more federal courts, the department shall follow the rule observed by the United States Commissioner of Internal Revenue until the conflict is resolved." ORS 316.032(2).

When following the federal administrative and judicial interpretations, decisions of the United States Supreme Court are conclusive. *Deblock v. Dept. of Rev.*, 286 Or 735, 740, 596 P2d 560 (1979). However, when the Supreme Court has not addressed the issue and federal court opinions are in conflict, ORS 316.032(2) directs the department to follow the position of the United States Internal Revenue Commissioner.

In determining what constitutes "home," the federal courts have varied in their interpretations. The Eighth Circuit has defined a taxpayer's home as his principal place of business or employment. *Weiberg v. Commissioner*, 639 F2d 434, 436, 81-1 USTC (CCH) ¶ 9175 (8th Cir 1981). The Ninth Circuit defines home as the taxpayer's "abode at his principal place of business or employment." *Coombs v. Commissioner*, 608 F2d 1269, 1274, 79-2 USTC (CCH) ¶ 9719 (9th Cir 1979). The Second Circuit has held that "home" means the ordinarily understood meaning of the word. *Rosenspan v. United States*, 438 F2d 905, 71-1 USTC (CCH) ¶ 9241 (2d Cir), *cert den* 404 US 864, 92 S Ct 54, 30 LEd 2d 108 (1971). Therefore, because there is a conflict among the federal courts, this court must follow the rule observed by the United States Commissioner of Internal Revenue Service.

■     The commissioner defines a taxpayer's home as follows:

"Generally, a taxpayer's 'home' for purposes of section 162(a)(2) of the Code is considered to be located at (1) the taxpayer's regular or principal (if more than one regular) place of business, or (2) if the taxpayer has no regular or principal place of business, then at the taxpayer's regular place of abode in a real and substantial sense." Rev Rul 83-82, 1983-1 CB 45.

■     Taxpayer claims that he had no principal place of business or employment because he worked at various job sites as a construction worker. Consequently, he claims his home was his regular place of abode. He then maintains that his regular place of abode was in Ontario. However, a person's principal place of business need not be limited to a specific location or job site. A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered. *Ellwein v. United States*, 778 F2d 506, 510, 85-2 USTC (CCH) ¶ 9853 (8th Cir 1985).

There undoubtedly will be situations when a construction worker will lack a principal place of business because the job sites to which he is sent are scattered over a large area. However, if the job sites are all located within the same general area, that area will constitute the taxpayer's principal place of business.

Taxpayer worked in the Portland area throughout 1989 and 1990. Although he moved between job sites, his place of employment, as a whole, was in the Portland area. Taxpayer himself testified that most job prospects were in the Portland area. Furthermore, the fact that he worked in the Portland area for two years demonstrates that it was his principal place of employment. The court finds taxpayer's tax home was in the Portland area. Therefore, his travel expenses for tax years 1989 and 1990 are not deductible because they were not incurred while away from home.

## 1991 DEDUCTIBLE EXPENSES

Taxpayer claimed Scappoose as his tax home for 1991. For part of the year, he worked at job sites in Salem,

Dallas, and Mill City. Because he stayed overnight at these job sites, he deducted his lodging and meal expenses. He also deducted mileage expenses of 262 miles for traveling from Scappoose to Salem. The department claims these expenses are not deductible as away from home travel expenses because the job sites were all located within a reasonable commuting distance of Scappoose.

■ As mentioned above, the court has determined that taxpayer's tax home was within the Portland metropolitan area. Because the job sites were all located outside of the Portland area, taxpayer's expenses were incurred while away from home. When a taxpayer's business leads him to a work assignment away from his tax home, the taxpayer may deduct his meal, travel, and lodging expenses while there only if the position is "temporary." Rev Rul 83-82, 1983-1 CB 45, 46. Employment is temporary if the particular job is anticipated to last less than a year. Taxpayers working at temporary assignments are not expected to move to the new location. Thus, the expenses incurred while there are a result of the exigencies of the business and are properly deductible. Alternatively, if the new job site is "indefinite," the taxpayer's principal place of business will have changed to the new location, and he is expected to move his home there. The traveling expenses would no longer be due to the exigencies of the business; rather, they would result from the taxpayer's personal decision to maintain his home away from his principal place of business.

The court finds that taxpayer's assignments in Salem, Dallas, and Mill City were all "temporary" in nature. Taxpayer did not anticipate being there for more than a year and, in fact, he was away from the Portland area for less than a year. His travel expenses resulted from the exigencies of his business. Therefore, they are properly deductible as away from home travel expenses.

Taxpayer also deducted daily expenses he incurred toward the end of the tax year when driving the 113 miles round-trip from Scappoose to the Newberg job site. He also deducted $24 for meals each day while at the Newberg and Scholls Ferry Road job sites. These expenses are not deductible.

■ Taxpayer explained he deducted the expenses because the job site was located more than 50 miles from his residence. Taxpayer believes the Oregon statutes permitted him to make this deduction.

ORS 316.812 provides:

"In addition to the modifications to federal taxable income contained in this chapter, there shall be subtracted from federal taxable income traveling expenses, as defined in ORS 316.806, incurred by a construction worker *during the first year of continuous employment on the same construction job site*." (Emphasis added.)

Traveling expenses are defined as follows:

"(4) 'Traveling expenses' means daily transportation expenses that:

"(a) Are not otherwise deductible under the federal Internal Revenue Code.

"(b) Are incurred by a construction worker in job-related travel between a construction job site located more than 50 miles from the principal residence of the construction worker.

"(5) 'Traveling expenses' includes gas, oil and automobile repairs and maintenance, but does not include meals unless the construction worker is required by the employer to stay overnight at the construction job site." ORS 316.806.

Taxpayer's expenses for meals while at the Newberg and Scholls Ferry Road job sites are not deductible because his employer did not require him to stay overnight. Also, his transportation expenses do not fall within ORS 316.812 because he did not stay at a single job site continuously for one year. Taxpayer was at the Newberg job site for only 29 days.

## INVESTMENT LOSS

On his 1989 tax return, taxpayer claimed the loss he incurred on the sale of his Camaro. Taxpayer testified that he bought the car as an investment because he planned to fix it up and sell it for a profit. Taxpayer owned the car for seven years before selling it. During that time, taxpayer made substantial modifications to the car. Among other things, he

installed a bigger engine, added a new transmission, narrowed the rear end of the car, and replaced the tires with 21-inch tires. To fit the tires completely under the body of the car, taxpayer installed "tubs" on the inside. He also replaced the typical steel hood with a fiberglass hood.

Taxpayer testified that when he bought the car he did not evaluate the market to determine the demand for modified cars. He said he just knew there was such a market. Taxpayer had not determined whether he would try to sell the car immediately upon completion, and he had no date when it would definitely be saleable. When taxpayer sold the car, it was not finished. Taxpayer testified that because he needed the money, he sold it to his landlord in Tieton. Taxpayer explained that he did not really have an opportunity to see how many people were interested in buying the car.

■ IRC section 212 allows a deduction for nonbusiness expenses incurred in the production of income.[5] If the activity is not engaged in for profit, expenses attributal to the activity are not deductible. IRC § 183. Whether an activity is engaged in for profit is an objective standard. The regulations state:

> "[D]eductions are not allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation. The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. * * * *In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent.*" Treas Reg § 1.183-2(a) (1972). (Emphasis added.)

---

[5] IRC section 212 provides in pertinent part:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year

"(1) for the production or collection of income;

"(2) for the management, conservation, or maintenance of property held for the production of income[.]"

■     The court finds that taxpayer held the car as a hobby rather than an investment. Taxpayer had the burden of proving that the vehicle was not held for personal use. Taxpayer testified that he intended to hold the car as an investment. However, the objective facts suggest otherwise. Taxpayer bought the Camaro without analyzing the market. He made substantial modifications to the car which he admitted significantly narrowed the available market. Taxpayer also held and worked on the car for seven years. He ultimately sold the vehicle, before it was finished, to his landlord without determining its market price. Taxpayer testified that he received no pleasure out of the vehicle because he could not drive it on the streets without getting pulled over by the police. However, taxpayer has been working on cars since he was 12 years old. His pleasure, *i.e.*, hobby, came from working on the car rather than driving it.

Taxpayer failed to provide the court with any objective evidence that he engaged in modifying the car for a profit, rather than as a hobby. Therefore, taxpayer's loss on the sale of his Camaro was a nondeductible personal hobby loss under IRC section 183.

The department's Opinion and Order No. 94-0795 must be modified and the tax liabilities recalculated. Costs to neither party.