IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

BRIAN L. HANSEN )
and CAROLYN J. HANSEN, )
)
      Plaintiffs, ) TC-MD 130387D
)
    v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
      Defendant. ) **FINAL DECISION**

The court entered its Decision, signed by Magistrate Tanner, in the above-entitled matter

on May 8, 2014. The court did not receive a request for an award of costs and disbursements

(TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision

incorporates its Decision without change.

Plaintiffs appeal Defendant's Notices of Deficiency Assessment, dated March 19, 2013,

for the 2009, 2010, and 2011 tax years. A trial was held on February 25, 2014, in Salem,

Oregon. Lawrence S. Nichols, Certified Public Accountant, appeared on behalf of Plaintiffs.

Brian L. Hansen (Hansen) testified on behalf of Plaintiffs. Shawna Johnson appeared on behalf

of Defendant.

Plaintiffs' Exhibits A to D were received without objection. Defendant's Exhibits A to J

were received without objection.

## I. STATEMENT OF FACTS

From tax year 2000 through the tax years (2009, 2010 and 2011) at issue, Plaintiffs

deducted on their Oregon state income tax returns business losses from the operation of a "dude

ranch" at their home address. (Def's Ex G at 2-25.) Hansen testified that operation of the dude

ranch began in 2000. He testified that he registered an assumed business name with the Secretary of State in March 2001. (Ptf's Ex A at 1.) Hansen testified that he had business cards printed around that time. Hansen testified that in January 2003 he requested information regarding membership in the Klamath County Chamber of Commerce and received a responsive letter. (*See* Ptf's Ex A at 4.) He testified that the ranch was not registered for the purpose of collecting Klamath County's transient room tax until after the tax years in question because he was not aware that he was required to register the business.

Plaintiffs claimed business expenses for the maintenance of horses, snowmobiles, passenger vehicles, motor homes, and other equipment. (Ptfs' Exs B at 4, C at 2-5; Def's Ex I at 5-10.) Plaintiffs claimed expenses for remodeling their basement for rental as a bed and breakfast and for work on "the household septic tank, well and outer building repairs." (*Id*.)

Hansen testified that he and his wife had "good jobs," and Defendant submitted evidence showing that from 2000 through the tax years at issue Plaintiff was employed full time by Qwest Corporation, as was Plaintiff's wife through November 2008. (*See* Def's Exs H at 2-25, F at 28.) Hansen testified that he spent "pretty much all [his] spare time" for several years remodeling Plaintiffs' basement to serve as a bed and breakfast, and that the basement was ready to rent in September or October 2010. He testified that prior to its completion guests of the dude ranch stayed in the motor homes on the subject property or in motels. Hansen testified that after the basement remodel was complete he never rented it to paying guests and the basement was used only once, by Plaintiffs' granddaughter.

Hansen testified that his marketing efforts during the tax years at issue consisted mostly of word-of-mouth contacts, but also included placing a "nickel ad" in a newspaper, posting flyers at local businesses and the Chamber of Commerce, and attending annual livestock shows.

Hansen testified that he did not keep a ledger of the ranch's income and expenses, but, instead, collected receipts in bags from which he totaled up expenses at the end of each year. Plaintiff testified that after Defendant's audit Plaintiffs displayed a small sign on their stable indentifying their property as a dude ranch. (*See* Def's Ex A at 21-22.)

Hansen testified that the dude ranch had "no customers at all" in 2009. (*See also* Def's Ex F at 27.) He testified that the ranch had "some customers in 2010 and 2011." When questioned why no gross receipts attributable to paying guests were reported on his 2010 return, Hansen testified that he had shown all his receipts and expenses to his accountant and had "no idea" how his accountant reported that information. When asked, Hansen was unable to identify whether any of the gross receipts reported on his 2011 return were attributable to paying guests.

Plaintiffs' income tax returns claimed gross receipts on their federal form Schedule C. (Def's Exs F at 28; *e.g.*, Def's Ex G at 2, 4, 6.) Hansen testified that the gross receipts were an allocation for their personal use of the dude ranch assets. Hansen testified that for tax years 2009 and 2010, Plaintiffs used that allocation method to add back approximately 75 percent of the expenses claimed for the dude ranch. Plaintiffs reported gross receipts of $44,600 in tax years 2009 and 2010, and $50,000 in tax year 2011. (Def's Ex G at 2, 4, 6.) Hansen testified that the amounts reported as gross receipts in 2009 and 2010 were an allocation for his personal use of the business property. He testified that he did not know how much of the 2011 reported gross receipts was an allocation for his personal use of the subject property, stating that his personal use of the subject property did not change in 2011.

Hansen testified that Plaintiffs' business never "got off the ground." Plaintiffs submitted tax returns, reporting business losses that totaled $570,966 for tax years 2000 through 2011, in amounts ranging from $24,238 to $81,871. (*See* Def's Ex F at 2-24.) Plaintiffs reported total

gross receipts of approximately $242,092 and expenses of approximately $813,058 for tax years 2000 through 2011. (S*ee id*.) Hansen testified that a sale of the property on which Plaintiffs' home and dude ranch were located was pending at the time of trial for approximately $470,000, an amount that he stated would yield "not a whole lot" of profit. Hansen testified that "only the property had been sold, not the business." Hansen testified that he did not "intend to evade his [income] taxes," and that he relied on the advice of his certified public accountant in preparing his taxes.

Plaintiffs requested that the court conclude that their returns were filed correctly and order Defendant to cancel its Notices of Deficiency Assessment. Defendant requested that the court uphold its Notices of Deficiency Assessment, including the 100 percent intent to evade penalty assessed to Plaintiffs.

## II. ANALYSIS

The issues in this case are (1) whether Plaintiffs' dude ranch was a for-profit or a not-for-profit activity under Internal Revenue Code (IRC) § 183; and (2) whether Plaintiffs are subject to the 100 percent intent-to-evade penalty under either ORS 305.265(13) or ORS 314.400(6).[1]

A.    *Burden of Proof (ORS 305.427)*

ORS 305.427 provides that:

> "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation."

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

The party seeking relief from the court – generally the plaintiff – must prove its case by a preponderance of the evidence; *i.e.*, by "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). An aggrieved taxpayer always has the burden of showing by a preponderance of the evidence that an income tax assessment is incorrect. *See Sproul v. Commission*, 1 OTR 31 (1963) (*rev'd* on other grounds, 234 Or 567, 382 P2d 99 (1963)).

1.  *Alleged hobby activities*

Where the taxing authority challenges whether a taxpayer engages in an activity for profit, the taxpayer has the burden of proving that the activity was for profit. *See*, *e.g.*, *Hintz v. Department of Revenue*, 13 OTR 462, 471 (1996) (holding that taxpayer failed to "provide any objective evidence that he engaged in modifying the car for a profit, rather than a hobby."). In the case before the court, Plaintiffs bear the burden of proving that their dude ranch was a for-profit activity.

2.  *Intent-to-evade penalties*

The procedure for tax penalty appeals is specifically governed by Oregon statutes. ORS 305.265(15). Oregon tax law differs from federal tax law. *Compare* ORS 305.427 to IRC § 7454. Although Oregon has adopted provisions of the Internal Revenue Code pertaining to the computation of taxable income, it has not done so with regard to judicial penalty appeal procedures. *Cf.* ORS 316.007; 316.048.

Taxpayers challenging an intent-to-evade penalty have the burden of producing sufficient evidence to show that their returns were filed without intent to evade. *See* ORS 305.427. A taxpayer who fails to present sufficient evidence to show that it has not acted with intent to evade

a tax will be unable to obtain relief from the penalty.[2] If a taxpayer provides sufficient evidence showing that it did not intend to evade taxes, the burden of producing evidence shifts to the taxing authority. *See* ORS 305.427. The court will not presume intent to evade on the part of any taxpayer. *Conzelmann v. N.W.P. & D. Co.* (*Conzelmann*), 190 Or 332, 350, 225 P2d 757 (1950).

ORS 305.427 applies in "all proceedings" at the tax court. Oregon common law is superseded by ORS 305.427. The common law standard of review of fraud is succinctly stated as follows:

> "Fraud is never presumed. * * * The person alleging fraud has the burden of proving it, and it must be established by evidence that is clear, satisfactory, and convincing. It is not necessary that it be established by direct evidence, for in many cases that would be impossible, and it may be proved by circumstantial evidence of a clear and satisfactory character."

*Conzelmann*, 190 Or at 350. The common law requires the one alleging fraud to prove the allegation by clear and convincing evidence, a higher standard than a preponderance of the evidence.

Under ORS 305.427, the burden of proof is the same for both parties: the preponderance of evidence standard rather than the clear and convincing standard stated in common law or federal income tax statutes.

In the case before the court, Defendant must submit evidence showing that Plaintiffs filed their income tax returns with intent to evade their taxes in order to overcome Hansen's sworn testimony that Plaintiffs had no such intention.

/ / /

---

[2] In ORS 305.217, like ORS 305.427, the Oregon legislature placed the burden of proving lack of intent to evade on the taxpayer. *See* ORS 305.217, denying a deduction to an individual or entity failing to submit information returns (ORS 314.360 or 316.202) unless the individual or entity can prove a lack of intent to evade.

*B.      Dude ranch:  operated as a for-profit or not-for-profit activity*

1.      *Applicable federal law*

As this court has previously noted, "[t]he Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev*., TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (citing ORS 316.007).  As a result, the legislature adopted, by reference, the federal definition for deductions, including those allowed under section 162 of the Internal Revenue Code (IRC)[3] for trade or business expenses, and IRC section 212 nonbusiness expenses incurred in the production of income.[4]

The code and regulations preclude deductions "for expenses incurred in connection with activities which are not engaged in for profit[,]" except as provided in section 183.[5]  Treas Reg § 1.183-2(a).  The regulations further provide that "deductions are not allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation." Treas Reg § 1.183-2(a).  Except as provided in IRC § 183(b), no deduction is allowed for expenses attributable to not-for-profit activity.  IRC § 183(a).  Under section 183(b), if the

---

[3] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"

[4] IRC section 212 of the code provides, in relevant part, for the "deduction [of] all the ordinary and necessary expenses paid or incurred during the taxable year--(1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income[.]"

[5] IRC § 183(a) provides: "[i]n the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section."

IRC § 183(d) provides, in relevant part: "If the gross income derived from an activity for 3 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit."

activity is not engaged in for profit, the deductibility of expenses is limited to the amount of any profits.

2.    *Nine factor analysis*

The court relies on objective standards in determining whether an activity is engaged in for profit. Treas Reg § 1.183-2(a). The regulations set forth nine factors for the court to consider in making its determination, although the list is not intended to be all-inclusive, and no one factor controls. Treas Reg § 1.183-2(b). Those factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expends; (4) the expectation that the assets may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *Id.*

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992); *see also* ORS 305.427 (2007) (providing that the burden of proof in the Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief).

When the facts are considered in the context of the nine factors, Plaintiffs failed to show that their dude ranch activity is engaged in for profit.

a.    *Manner in which taxpayer carries on activity*

Plaintiffs failed to maintain accurate books and records. Plaintiffs did not maintain a separate ledger or other record showing gross receipts and detailing operating expenses. Hansen testified that Plaintiffs' recordkeeping consisted solely of storing receipts in bags. For

approximately 10 years, Plaintiffs made no change in operating methods to reduce losses or report a profit. Plaintiffs made little attempt to promote and advertise the dude ranch and did not change their advertising methods even though significant losses were claimed each year. Plaintiffs did not operate their dude ranch in a businesslike manner.

> b. *Expertise of taxpayer*

Plaintiffs did not present evidence of expertise in running a dude ranch. Hansen admitted that he was unaware of the requirement that dude ranches must collect and remit Klamath County transient room taxes paid by guests. Plaintiffs offered no evidence showing that they researched dude ranch operations or sought advice from experienced operators.

> c. *Time and effort expended*

Hansen testified that he devoted all of his spare time for years to operating and improving the dude ranch while being employed at a full-time job. Plaintiffs' evidence shows that the time and effort expended involved significant personal and recreational aspects, including remodeling Plaintiffs' basement and maintaining horses and recreational vehicles. Plaintiffs submitted no evidence that the time spent working on the dude ranch directly resulted in for-profit activities rather than personal benefit or pleasure.

> d. *Expectation that assets may increase in value*

Plaintiffs submitted evidence that the property where the dude ranch was located, including Plaintiffs' personal residence, would be sold for approximately $470,000. Plaintiffs did not provide evidence of the original purchase price of the property or of the amount of the sale price attributable to the dude ranch assets. From the evidence submitted, it has not been shown that Plaintiffs expected to reap a profit through an increase in the value of the dude ranch assets.

e.      *Success in carrying on similar or dissimilar activities*

Plaintiffs did not submit evidence of having undertaken similar activities resulting in a profit at any time in the past.

f.      *History of income or losses*

Plaintiffs' dude ranch activity reported approximately $570,000 in losses since tax year 2000. Even though Plaintiffs reported gross receipts of approximately $240,000 over the same time period, Hansen testified that a significant portion, if not all, of the reported receipts was an allocation for Plaintiffs' personal use of the dude ranch assets. Hansen could not identify any receipts attributable to paying customers during the tax years at issue. Hansen testified that the dude ranch business never "got off the ground," attributing the lack of success to depressed market conditions in 2009, 2010, and 2011. Plaintiffs have not established a history of the dude ranch receiving any receipts from its activity and failed to report any profit during the tax years at issue or at any time since 2000.

g.      *Amount of occasional profits earned*

Plaintiffs' dude ranch activity never reported a net operating profit.

h.      *Financial status of the taxpayers*

For multiple years, Plaintiffs' personal financial resources permitted them to incur substantial out-of-pocket costs for the dude ranch. Plaintiffs' chief source of income throughout the years of operating the dude ranch came from their full-time employment. Plaintiffs' income was sufficiently high that they derived a tax benefit from the losses claimed from the dude ranch activity.

/ / /

/ / /

i.  *Elements of personal pleasure or recreation*

Plaintiffs' dude ranch assets included personal vehicles, motor homes, snowmobiles, and horses. Plaintiffs remodeled the basement of their personal residence, alleging that it was to be rented to dude ranch guests. However, Plaintiffs attributed 75 percent of the expenses claimed for those assets to their personal use. (*See* Ptfs' Ex B at 4.) Plaintiffs' extensive personal use of the dude ranch assets strongly suggests that Plaintiffs derived significant recreational and personal benefits from those assets.

j.  *Summary*

None of the nine factors discussed above supports Plaintiffs' claim that their dude ranch activity was operated for profit.

C.  *Intent to evade income taxes*

Defendant relies on two different statutes for its authority to impose the 100 percent intent-to-evade penalty on Plaintiffs. (Def's Ex J at 1.) ORS 305.265(13) states that "[i]f the return was falsely prepared and filed with intent to evade the tax, a penalty equal to 100 percent of the deficiency shall be assessed and collected." ORS 314.400(6)(b) imposes a similar penalty in cases where "[a] report or return was falsely prepared and filed with intent to evade the tax[.]" The penalty shall be assessed if two elements are present: (a) a falsely prepared return and (b) a return filed with the intent to evade tax. Unlike the federal income tax evasion statute, the Oregon statutes do not require either willfulness on the part of the taxpayer or an affirmative act other than the filing of the falsely prepared return. *Cf.* IRC § 7201.

Plaintiffs falsely prepared their 2009, 2010, and 2011 Oregon state income tax returns. Plaintiffs' dude ranch activity was not a trade or business engaged in for profit. Plaintiffs falsely

/ / /

claimed business loss deductions for a business that they did not operate. The first statutory element (filing a false return) is met.

The second element to address is whether Plaintiffs filed those returns intending to evade the tax. Because Hansen testified that Plaintiffs did not intend to evade their income taxes, the burden of proof going forward shifts to Defendant. Defendant relied exclusively on its exhibits.

1.     *Defendant's evidence*

Federal income tax case law provides useful guidance to determine whether a taxpayer filed income tax returns with intent to evade taxes. Federal civil tax fraud is "intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." *Edelson v. Comm'r*, 829 F2d 828, 833 (9th Cir 1987).

> "The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Fraud may not be found under 'circumstances which at the most create only suspicion.' However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available. * * *."

*Niedringhaus v. Comm'r* (*Niedringhaus*), 99 TC 202, 210 (1992) (citations omitted). Federal case law setting forth guidance on the determination of fraudulent intent is relevant, with the caveat that under ORS 305.427 the standard of proof for intent to evade is significantly lower than in federal court.

Recognizing that taxpayers seldom confess tax fraud, the courts have "inferred intent from various kinds of circumstantial evidence." *Bradford v. Comm'r,*, 796 F.2d 303, 307 (9th Cir 1986) (holding that the Tax Court's finding of fraud by clear and convincing evidence was supported by the Tax Court's factual findings). "[B]adges of fraud" include, but are not limited to: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns;

(4) implausible or inconsistent explanations of behavior; and (5) concealment of assets. *Id.*; *see also Niedringhaus*, 99 TC at 211 (listing additional badges of fraud).

In the case before the court, Plaintiffs understated their taxable income. Plaintiffs claimed business deductions for which they were not entitled. Plaintiffs' intentional understatement of their taxable income resulted in a tax savings to Plaintiffs – they paid less state income tax for each of the tax years before the court. *See Hicks Co., Inc. v. Comm'r*, 56 TC 982, 1019 (1971) ("for purpose of fraud an understatement of taxes can be accomplished by an overstatement of deductions").

Plaintiffs' records were inadequate. Plaintiffs did not maintain any records of the dude ranch. Hansen testified that he kept receipts for expenses incurred to operate the dude ranch in paper bags. Plaintiffs' explanation of their accounting method, allocating their personal use of the assets as business gross income, was not supported by any legal or accounting authority. It is an unacceptable practice to label reimbursement for personal expenses as gross receipts from a trade or business. For Plaintiffs to label their personal use of dude ranch assets as "gross receipts" from their dude ranch activity, knowing that there were no receipts from third parties during the tax years at issue, is so egregious as to be deceptive.

Plaintiffs' explanation for their activity – that they were running a dude ranch – is implausible. Plaintiffs reported horses, snowmobiles, motor homes, and personal vehicles as dude ranch assets. Plaintiffs admit that their personal use of dude ranch assets amounts to 75 percent of the expenses claimed for those assets. Plaintiffs remodeled the basement of their house, stating that the remodel was necessary to provide suitable accommodations for paying guests. However, the remodeled basement was used exclusively by Plaintiffs' family. Although Hansen claimed that the ranch had paying guests in 2010, income attributable to those guests was

not reported on Plaintiffs' 2010 return. Hansen could not identify whether income attributable to paying guests was reported on Plaintiffs' 2011 return. It is unclear whether the dude ranch ever had paying guests. There is no evidence that anyone viewing Plaintiffs' property would know that Plaintiffs were operating a dude ranch during the tax years at issue. Plaintiffs displayed a sign identifying their property as a dude ranch after they were audited by Defendant. (*See* Def's Ex A at 21-22.) Although Plaintiffs registered a business name and printed at least one business card, their marketing efforts were minimal.

Defendant showed by a preponderance of the evidence submitted to the court that Plaintiffs' returns were filed with intent to evade their income taxes. It remains to consider Plaintiffs' defense of reliance on their accountant.

2. *Plaintiffs' reliance on their accountant*

Hansen testified that he had "no idea" how his taxes were prepared and relied exclusively on his certified public accountant to correctly file Plaintiffs' income tax returns. Good faith reliance on a qualified accountant's advice may rebut a charge of intent to evade, but only if the taxpayer "made full disclosure of all relevant information to that professional." *United States v. Bishop*, 291 F3d 1100, 1107 (9th Cir 2002) (holding that a taxpayer relying on a tax professional's advice must have fully disclose all relevant information to the tax professional in order for a good faith reliance defense to be applicable to willful tax fraud and evasion charges)..

Hansen testified that he informed his certified public accountant of his receipts from the dude ranch activity, and that his accountant prepared Plaintiffs' tax returns. Plaintiffs did not offer specific evidence of what information was disclosed to their accountant. Such information is relevant. Plaintiffs' certified public accountant was present at trial as their authorized

/ / /

representative, but did not testify. Plaintiffs failed to prove that they relied on their certified public accountant.

In sum, Plaintiffs failed to submit sufficient evidence for the court to conclude that they did not file false returns with intent to evade income taxes for tax years 2009, 2010, and 2011.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiffs failed to carry their burden of proof. Defendant's Notices of Deficiency Assessment, dated March 19, 2013, for tax years 2009, 2010 and 2011 are accepted, including the assessed intent to evade income tax penalties. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of tax years 2009, 2010, and 2011 is denied.

Dated this ____ day of May 2014.


ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on May 27, 2014. The court filed and entered this document on May 27, 2014.*