IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| ISRAEL BALVANEDA<br>and NORMA K. AGUILAR, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 160156R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appeal Defendant's Notice of Assessment dated February 26, 2016, for the

2012 tax year. A trial was held in the Oregon Tax Courtroom on July 7, 2016, in Salem, Oregon.

Israel Balvaneda (Balvaneda) and Geoffrey Kossak (Kossak) testified on behalf of Plaintiffs.

Amanda Gomulinski (Gomulinski), Tax Auditor, appeared and testified on behalf of Defendant.

Plaintiffs' Exhibits 1 to 104 were received without objection. Defendant's Exhibits A to H were

received without objection.

## I. STATEMENT OF FACTS

Balvaneda testified that he lives in Albany, Oregon, which is in Linn County, and is a

journeyman cement mason and a member of the Cement Masons Local Union No. 555 (union).

(Ptfs' Ex 20, 22.) Balvaneda testified that he has lived in Albany since 2007. The union

dispatches Balvaneda to work for, or on behalf of, signatory contractors; the union itself does not

employ Balvaneda. (Ptfs' Ex 20.) During 2012 Balvaneda worked for Hoffman Construction

Company and Industrial Concrete, LLC at job sites in the following Oregon cities: Hillsboro

---

[1] This Final Decision incorporates without change the court's Decision, entered January 6, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

(Washington County), Sandy (Clackamas County), McMinnville (Yamhill County), and Eugene (Lane County). (Ptfs' Ex 23–24; Def's Ex C-2, D-1.) Balvaneda worked approximately 88 days in Hillsboro, 51 days in Sandy, 21 days in McMinnville, and 66 days in Eugene, which yields a total of 226 days and consists of the following percentages: 39 percent in Hillsboro, 23 percent in Sandy, and 9 percent in McMinnville (71percent combined), and the remaining 29 percent in Eugene. (Ptfs' Exs 38–87; Def's Exs D-2–D-54.) Balvaneda is required to use his own vehicle to travel to and from construction sites, and he is not reimbursed for the cost of fuel or the maintenance of his vehicle. (Ptfs' Ex 20.) He is also not reimbursed for the cost of the "normal hand tools" or work attire needed for work. (*Id.*; Def's Ex C-6.)

On his 2012 tax return, Balvaneda deducted business expenses arising from 18,000 miles of travel to and from the aforementioned construction sites ($9,990), his union dues ($4,068), and the cost of tools ($557)—totaling $14,615 in unreimbursed employee expenses. (Ptfs' Ex 6, 14.) In 2015, Defendant audited Balvaneda's 2012 Oregon income tax return and denied the deductions for all $9,990 of the travel expenses, $14 of the union dues, $522 of the tool costs, and the undisclosed cost of work boots—increasing Balvaneda's taxable income by $10,526 and resulting in a tax deficiency of $945. (Def's Ex H-1–H-4.)

Defendant issued a Notice of Deficiency on November 5, 2015, to which Balvaneda objected by a letter, and Defendant responded to Balvaneda's objection by a letter dated February 22, 2016. (Def's Ex G-1.) In that response letter to Balvaneda, Defendant granted only the deduction for work boots ($338), thereby decreasing the tax deficiency, and reiterated that the travel expenses are not deductible. (*Id.*) Finally, on February 26, 2016, Defendant issued a Notice of Assessment, and Balvaneda timely appealed to the Tax Court on April 16, 2016. (Def's Ex A-1.)

## II. ANALYSIS

The issue in this case is whether Balvaneda may deduct certain unreimbursed business expenses for the 2012 tax year, and if so, whether such expenses are sufficiently substantiated. Balvaneda is specifically challenging Defendant's disallowance of his claimed deductions for travel between his personal residence and various work sites.[2]

In analyzing Oregon income tax cases the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's "personal income tax law identical in effect" to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals, where possible. ORS 316.007.[3] Second, in cases before the tax court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence." ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace," and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Finally, "[i]n an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.    *2012 Tax Home*

IRC section 162(a) allows deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" Conversely, IRC section 262(a) disallows deductions for "personal, living, or family expenses." Generally, a taxpayer cannot deduct the cost of commuting between the taxpayer's residence and the

---

[2] In his Complaint and at trial, Balvaneda did not challenge Defendant's disallowance of the deductions claimed for his tool costs, therefore, the court will not address those deductions in its analysis.

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

taxpayer's place of business, except when the taxpayer travels "away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2); *see* Treas Reg § 1.162-2(e) (1960).

The phrase "away from home" means "away from the taxpayer's *tax* home"—thus, "tax home" is not necessarily the taxpayer's residence. *See Comm'r v. Flowers*, 326 US 465, 473-74, 66 S Ct 250, 90 L Ed 203 (1946); *Kroll v. Comm'r*, 49 TC 557, 562-63 (1968); Rev Rul 93-86, 1993-2 CB 71, 1993 IRB LEXIS 508 (Nov 1993) (Rev Rul 93-86). A taxpayer's tax home is "located at (1) the taxpayer's regular or principal (if more than one regular) place of business, or (2) if the taxpayer has no regular or principal place of business, then at the taxpayer's regular place of abode in a real and substantial sense." Rev Rul 93-86. If a taxpayer has neither a regular place of business nor a regular abode in a real and substantial sense, then the taxpayer is an itinerant whose tax home is wherever he or she happens to work, in which case travel expenses are generally nondeductible under IRC section 162(a)(2). *Id.*

Revenue Ruling 99-7 provides three exceptions by which expenses incurred from traveling between a taxpayer's residence and work location may be deducted, the first of which is a two-prong test: First, the work location must be "*temporary*," which means "realistically expected to last (and does in fact last) for 1 year or less[.]" Rev Rul 99-7, 1999-1 CB 361, 1999 IRB LEXIS 12 (Feb 1, 1999) (Rev Rul 99-7) (emphasis in original). Second, the work location must be "*outside* the metropolitan area where the taxpayer lives and normally works." *Id.* (emphasis in original). The second prong contains its own two-prong test—the taxpayer must (1) live *and* (2) normally work in the same metropolitan area. *Id.*

Rev Rul 99-7 also allows travel expense deductions in cases where a taxpayer has "one or more regular work locations away from the taxpayer's residence * * * and a *temporary* work location in the same trade or business, regardless of the distance." *Id.* (emphasis in original).

Finally, Rev Rul 99-7 allows travel expense deductions in cases where "a taxpayer's residence is the taxpayer's principal place of business within the meaning of § 280(c)(1)(A)," and the taxpayer travels between such residence and "another work location in the same trade or business, regardless of whether the other work location is *regular* or *temporary* and regardless of distance." *Id.* (emphasis in original).

Balvaneda testified that he did not use his residence as his principal place of business per IRC section 280, so the third exception is disregarded, and the court will focus on whether the first two exceptions of Rev Rul 99-7 apply to Balvaneda.

1. *Metropolitan area*

    a. Generally

At trial, Defendant relied on the first exception of Rev Rul 99-7 to argue that Balvaneda is not entitled to the claimed travel expense deductions. Specifically, Defendant argued that although Balvaneda's work locations were temporary and outside the metropolitan area in which he normally lived—*i.e.*, he lived in Albany and worked in the Portland and Eugene metropolitan areas—he did not live *and* normally work in the same metropolitan area, and thus he fails the second prong of the two-prong test. Neither Rev Rul 99-7 nor other revenue rulings define "metropolitan area," and the US Tax Court has declined "to adopt any such rigid definition" as provided, for example, by the Office of Management and Budget (OMB). *Bogue v. Comm'r*, 102 TCM (CCH) 41, 2011 Tax Ct Memo LEXIS 164 at *31-32 (July 11, 2011), *aff'd*, 522 Fed App'x 169 (3d Cir 2013). Rather, the US Tax Court and this court evaluate "the facts and circumstances" in defining "metropolitan area." *Id.*; *Marcum v. Dept. of Rev.*, TC-MD 150414N, WL 1688425 at *4 (Apr 25, 2016).

/ / /

In addition to the facts and circumstances, this court also looks to the "ordinary common meaning of the term[:]

> " 'Metropolitan' is defined as 'of, relating to, or constituting a region including a city and the densely populated surrounding areas that are socially and economically integrated with it[.]' The definition of 'metropolitan' includes, as a verbal illustration, the term 'metropolitan area.' *Id.* That definition provides a better test for metropolitan area than strict reliance on distance because it more fully reflects the patterns of human behavior in a given local [*sic*]."

*Austin v. Dept. of Rev.*, TC-MD 060634C, WL 4224969 at *3 (Nov 21, 2007) (citing *Webster's Third New Int'l Dictionary* 1425 (unabridged ed 2002)). Although the court in *Austin* noted that it would consider mileage as a factor in defining a metropolitan area, the court pointed out that there is no commonly accepted radius that defines a metropolitan area. *Compare, e.g.*, *Williams v. Dept. of Rev.*, TC-MD 050811B, WL 549767 at *2 (Feb 12, 2007) (holding that plaintiff's 40-mile commute was not within the same metropolitan area); *Porter v. Dept. of Rev.*, TC-MD 060550B, WL 1437493 at *2 (Apr 23, 2007) (holding that plaintiff's 50-mile commute was not within the same metropolitan area) with *Jury v. Dept. of Rev.*, TC-MD 060818D, WL 3243109 at *2 n 5 (Oct 31, 2007) (noting that the US Tax Court has deemed a metropolitan area to be as large as a 45-50 mile radius and as small as a 35-mile radius) (citing *Marple v. Comm'r*, TC Summ Op 2007-76, WL 1475269 (2007) and *Wheir v. Comm'r*, TC Summ Op 2004-11, WL 1921830 (2004), respectively).

Defendant submitted into evidence a 2013 "Core Based Statistical Areas (CBSAs)" map, created by the US Department of Commerce, that shows Albany, Portland, and Eugene each being a metropolitan statistical area (MSA) independent of one another. (Def's Ex E-2.) However, as the US Tax Court pointed out in *Bogue*, such rigid definitions yield some absurd results. For example, a taxpayer who lives and normally works in the Albany MSA, yet adjacent to the border of the Eugene MSA, and temporarily works only a mile across that border would

qualify for a travel expense deduction under the first exception of Rev Rul 99-7. Whereas the same taxpayer would be denied such a deduction if he or she temporarily worked 40 miles away on the opposite end of the Albany MSA: an absurd result. Hence, the court will use the "ordinary common meaning" of "metropolitan area" and evaluate the facts and circumstances of the case to determine the metropolitan area in which Balvaneda lived and normally worked during 2012.

        b.        Metropolitan area in which Balvaneda lived

Balvaneda has lived in Albany since 2007; the court takes judicial notice[4] of the fact that Albany is approximately 70 miles south of Portland, 45 miles north of Eugene, and 25 miles south of Salem—the three most populous Oregon cities from largest to smallest, as indicated by the 2010 census: Portland (583,776), Eugene (156,185), and Salem (154,637). For the sake of contrast, Albany's 2010 population was 50,158. The court also takes judicial notice of the fact that Eugene and Salem not only have similar populations, but also similar population densities according to the 2010 census (3,572 per square mile and 3,228 per square mile, respectively) and a similar land area (43.74 square miles and 48.45 square miles, respectively).

Albany is not within the Portland metropolitan area, because Portland is 70 miles away, which is at least 20 miles farther away than the largest of the judicially accepted metropolitan-area radii, and because Albany is separated from Portland by large swaths of farmland. As a result, Albany cannot reasonably be said to be a densely populated area that is "socially and economically integrated" with Portland. Albany is more reasonably deemed to be within the Salem metropolitan area because Salem is within the smallest judicially accepted radii by

---

[4] "A court may take judicial notice, whether requested or not[,]" of a fact "not subject to reasonable dispute in that it is either: (1) Generally known within the territorial jurisdiction of the trial court; or (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OEC 201(b)-(d).

approximately 10 miles, while Eugene is at the edge of the largest accepted radii. Albany is not within the Eugene metropolitan area, because Albany is approximately 20 miles closer to Salem than Eugene, and Salem and Eugene are quite similar in total population, population density, and land area. To the extent that Albany is "socially and economically integrated" with any city at all, Salem is most likely that city. Thus, Balvaneda is deemed to have lived only in the Salem metropolitan area during 2012.

c. Metropolitan area in which Balvaneda normally worked

Next, the court must determine the metropolitan area in which Balvaneda normally worked during 2012, if indeed he "normally" worked within such an area at all. Because Rev Rul 99-7 does not define "normally," this court "looks again to the ordinary common meaning of the term for guidance[:] * * * 1: in a normal manner * * * 2: commonly, usually[.]" *Austin*, 2007 WL 4224969 at *5 (citing *Webster's Third New Int'l Dictionary* 1540 (unabridged ed 2002)). In *Austin*, the court held that the plaintiff worked in the Salem metropolitan area for less than one third of the time at issue, which was insufficient to qualify as "commonly or usually working in that area[.]" *Id.* at *6.

According to Balvaneda's log book, in 2012 he worked for about 88 days in Hillsboro, 51 days in Sandy, 21 days in McMinnville, and 66 days in Eugene. (Ptfs' Ex 38-87; Def's Ex D-2–D-54.) A sub-issue arises as to whether Hillsboro, Sandy, and McMinnville fall within a common metropolitan area because they are much closer in proximity to one another than any of them are to Eugene, and percentage-wise, Balvaneda worked in those three cities for 71 percent of the time and in Eugene for 29 percent of the time.

The court takes judicial notice of the fact that Portland is the largest, closest city to those three cities: Portland is about 20 miles east of Hillsboro, 28 miles northwest of Sandy, and 40

miles northeast of McMinnville. Salem is the next largest, closest city to those three cities, and it is roughly 50 miles south of Hillsboro, 62 miles southwest of Sandy, and 26 miles south of McMinnville.

Portland is 30 miles closer than Salem to Hillsboro and 34 miles closer to Sandy, and thus, Hillsboro and Sandy are reasonably considered to fall within the Portland metropolitan area. McMinnville is only 14 miles closer to Salem than Portland; however, Portland's population was almost four times larger than Salem's population in the 2010 census, and Portland covers an area of roughly 145 square miles, while Salem covers about 48 square miles—approximately a threefold difference in area. Because Portland is much larger in population and area than Salem, and the fact that distance is a factor to be considered in conjunction with *Webster's* definition of "metropolitan," it is modestly more reasonable to consider McMinnville to be more "socially and economically integrated" with Portland than Salem. Thus, McMinnville is regarded as being within the Portland metropolitan area.

Because Hillsboro, Sandy, and McMinnville are within the Portland metropolitan area, Balvaneda worked for 71 percent of the time in that metropolitan area. Even though the particular work locations at which Balvaneda worked in 2012 were of a "temporary" nature, the court holds that 71 percent is sufficient to be considered as having "normally" worked in the Portland metropolitan area.

Accordingly, the court holds that the first exception of Rev Rul 99-7 is unavailing for Balvaneda's claimed travel expense deductions because he lived only in the Salem metropolitan area during 2012, and he normally worked in the Portland metropolitan area. Thus, Balvaneda did not live and normally work in the same metropolitan area in 2012, and the first exception of Rev Rul 99-7 does not allow the claimed travel expense deductions.

## 2. *Regular work location*

The second exception of Rev Rul 99-7 allows travel expense deductions to taxpayers who travel between their residences and temporary job sites if they have one or more regular work locations away from their residences. Rev Rul 99-7 does not define "regular work location," but the US Tax Court inferred that the term should have the same meaning as "regular place of business" as defined in Revenue Ruling 90-23, 1990-1 CB 28, 1990 IRB LEXIS 99 (Jan 1990) (Rev Rul 90-23). *Bogue*, 2011 Tax Ct Memo LEXIS 164 at *36. Rev Rul 90-23 defines "regular place of business" as "any location at which the taxpayer works or performs services on a regular basis." The US Tax Court also inferred that the terms "regular work location" and "temporary work location" are mutually exclusive because they are contrasted with one another in Rev Rul 99-7. *Id.* In *Bogue*, the taxpayer normally worked only at temporary locations in one metropolitan area and was unable to establish that he performed work on a regular basis at any particular location. *Id.* at *38. Because the taxpayer had no regular work location, the court held that the taxpayer did not qualify for the second exception of Rev Rul 99-7.

Balvaneda normally worked at three temporary locations in the Portland metropolitan area and one temporary location in Eugene during 2012. Balvaneda testified that he had no regular place of business, but rather only temporary work locations. Because Balvaneda had no regular work locations during 2012, the court holds that he does not qualify for the second exception to Rev Rul 99-7.

## 3. *Regular place of abode in a real and substantial sense*

At trial, Balvaneda urged the court to consider Revenue Ruling 73-529, which may provide travel expense deductions to the taxpayer who "has no regular or principal place of business" but instead has a "regular place of abode in a real and substantial sense[.]"

Rev Rul 73-529, 1973-2 CB 37, 1973 IRB LEXIS 81, at *3 (July 1973) (Rev Rul 73-529). Three factors determine whether a taxpayer's "claimed abode is his 'regular place of abode in a real and substantial sense.' " They are:

> "(1) Whether the taxpayer performs a portion of his business in the vicinity of his claimed abode and uses such abode (for purposes of his lodging) while performing such business there;
> (2) Whether the taxpayers [*sic*] living expenses incurred at his claimed abode are duplicated because his business requires him to be away therefrom; and
> (3) Whether the taxpayer
> > (a) has not abandoned the vicinity in which his historical place of lodging and his claimed abode are both located,
> > (b) has a member or members of his family (marital or lineal only) currently residing at his claimed abode, *or*
> > (c) uses his claimed abode frequently for purposes of his lodging."

*Id.* at *4–5 (emphasis in original).

If a taxpayer satisfies all three factors, then he is presumed to have established his tax home as being the residence at which he regularly lives, and he may deduct traveling expenses per IRC section 162(a)(2). *Id.* If only two factors are satisfied, then the taxpayer is not within the safe harbor of Rev Rul 73-529, and the taxpayer's residence may be considered his tax home only after a close scrutiny of all of the "facts and circumstances" of the case. *Id.* Finally, if the taxpayer satisfies only one factor, then the taxpayer is considered an itinerant, and he has no tax home from which to be away and therefore cannot satisfy the "away from home" requirement of section 162(a)(2); rather, his tax home is wherever he works. *Id.* Balvaneda argued that he satisfied the first and third factors, and that he therefore should be allowed his claimed travel expense deductions. Balvaneda acknowledged that he did not duplicate his living expenses as the second factor requires; he also did not provide any evidence that would support a finding that the second factor is satisfied. The court will determine whether the first and third factors are applicable to Balvaneda.

Balvaneda satisfies the third factor because he has lived in Albany since 2007, though it was not determined whether Balvaneda has lived in the same house in Albany since 2007. Balvaneda testified that he never stayed overnight for work anywhere during 2012—he came home after work every day and used his claimed abode for purposes of lodging. Thus, Balvaneda has satisfied the third factor. In considering the first factor, the court must determine whether Balvaneda's work in the Portland and Eugene metropolitan areas is considered to be "in the vicinity of his claimed abode."

The Ninth Circuit Court of Appeals restated the first factor as being an inquiry into whether there exists a "business connection to the locale of the claimed home[.]" *Henderson v. Comm'r*, 143 F3d 497, 500 (9th Cir 1998). Citing *Henderson*, the US Tax Court similarly "requires that a taxpayer must have some business justification beyond merely personal reasons for maintaining an alleged tax home remote from a place of employment." *Yanke v. Comm'r*, 95 TCM (CCH) 1521 (May 15, 2008), 2008 Tax Ct Memo LEXIS 132 at *7. The *Yanke* court made clear that "[m]ere 'hopes' of some day returning to an alleged tax home and finding employment, particularly where job opportunities are 'bleak', is not sufficient to provide the necessary business connection to an alleged tax home." *Id.* at *8.

Balvaneda presented no evidence to suggest that he had a business reason for residing in Albany—moreover, he testified that there are not many commercial concrete job opportunities in Albany. Even if there were such opportunities, Kossak testified that the union could not guarantee that Balvaneda would receive those opportunities. The court finds that Balvaneda had no business reason for residing in Albany and that his tax home is therefore wherever he worked in 2012. Having satisfied only one factor of Rev Rul 73-529, Balvaneda is disallowed the claimed travel expense deductions.

4.   *Construction worker subtraction*

The Oregon Legislature has carved out a travel expense exception for construction workers who travel more than 50 miles from their principal residences to construction job sites, known as the "construction worker subtraction." That provision provides: "there shall be subtracted from federal taxable income traveling expenses, as defined in ORS 316.806, incurred by a construction worker during the first year of continuous employment on the same construction job site." ORS 316.812. This court has narrowly interpreted ORS 316.812 to mean that travel expenses may be deductible by construction workers who "stay at a single job site continuously for one year." *Hintz v. Dept. of Rev. (Hintz)*, 13 OTR 462, 469 (1996). Because the taxpayer in *Hintz* was at the subject job site for only 29 days during the year in question, the court accordingly upheld the Department's denial of the taxpayer's travel deductions claimed under ORS 316.812.

Defendant argued at trial that Balvaneda should be denied the construction worker subtraction because he lacked sufficient substantiation, viz., he lacked odometer readings from the use of his truck in driving between his residence and job sites. This court, however, finds that Balvaneda does not qualify for the construction worker subtraction because he did not "stay at a single job site continuously for one year." In 2012, Balvaneda worked for roughly 88 days in Hillsboro, 51 days in Sandy, 21 days in McMinnville, and 66 days in Eugene. (Ptfs' Ex 38–87; Def's Ex D-2–D-54.) Thus, Balvaneda did not continuously work at the same construction job site for one year, and therefore he cannot deduct his incurred travel expenses under ORS 316.812.

/ / /

/ / /

B.    *Substantiation*

Because Balvaneda's claimed travel expense deductions remain disallowed under the foregoing legal standards, the issue of substantiation for those expenses need not be analyzed.

## III.  CONCLUSION

The court concludes that during 2012, Balvaneda lived only in the Salem metropolitan area, normally worked at temporary locations in the Portland metropolitan area, and worked at a temporary location in the Eugene metropolitan area.  Because Balvaneda did not live and normally work in the same metropolitan area as otherwise required by the first exception in Rev Rul 99-7, he is disallowed the claimed travel expense deductions.  The court also concludes that Balvaneda had no regular work locations away from his residence as otherwise required by the second exception in Rev Rul 99-7, and he is therefore disallowed the claimed travel expense deductions.  The court further concludes that Balvaneda satisfied only the third factor of Rev Rul 73-529, and he is thus deemed an itinerant whose tax home is wherever he happens to work; accordingly, he is disallowed the claimed travel expense deductions.  Finally, the court concludes that Balvaneda did not continuously work at the same construction site for one year as otherwise required by ORS 316.812, and the claimed travel expenses may not be subtracted from his 2012 taxable income.  Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of January 2017.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on January 25, 2017.*